NORTH AMERICAN TRANSPORTATION & TRADING CO. v. SAMUELS.

(Circuit Court of Appeals, Ninth Circuit. June 20, 1906.)

No. 1,273.

EVIDENCE—WRITTEN CONTRACT—EXPLANATION BY PAROL.

A written contract provided for the sale of all the seller's merchandise at Nome, Alaska, except liquors, cigars, tobacco, and lumber, but contained no stipulation as to the character and quantity of the merchandise to be delivered, nor as to the sales to be made between the execution of the contract and the date specified for delivery. It had been orally agreed

that the merchandise consisted of a first-class stock, not more than 30 per cent. of which was groceries and provisions, and that the seller should continue to sell only in the ordinary course of business and not at a sacrifice. The seller immediately wired its agent confidentially to dispose of as much of the stock as possible for cost or a little below, and large quantities of the more valuable goods were sold out of the ordinary course of business. *Held*, that parol evidence was admissible to show the particular kind and quality of the goods contracted to be sold, the respective proportions thereof, and the manner in which it was contemplated the seller should make sales from the stock prior to delivery.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 2030-2035.]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

This is an action brought by the defendant in error to recover damages from the plaintiff in error for a breach of a contract entered into by the respective parties on April 19, 1904. The complaint alleges:

"III. That on or about February 1, A. D. 1904, the said plaintiff then being at the place of business of the defendant, in the city of Chicago, Illinois, for the purpose of ascertaining from said defendant the freight rates on goods and merchandise which said plaintiff then contemplated purchasing and shipping to Alaska, said defendant then and there represented to the said plaintiff that it, the said defendant, then owned and had a general stock of merchandise, consiting of dry goods, clothing, boots and shoes, hats, caps, gents' furnishing goods, carpets, furniture and house furnishings, hardware, coal, groceries, and provisions, and other miscellaneous merchandise, in its warehouses and stores, in Nome, in the district of Alaska, of the value of more than $75,000, and that it, the said defendant, would have and own, at the opening of navigation, at Nome, Alaska, in the year 1904, to wit, on or about June 15, A. D. 1904, after selling from the said stock of merchandise in the ordinary and usual course of trade and business, merchandise of the kind hereinbefore enumerated and described of the value of at least $75,000, and that 40 per cent. or more of the said goods and merchandise of the said defendant, remaining on hand at the opening of navigation as aforesaid, would be and consist of dry goods and other merchandise above mentioned, other than and exclusive of groceries and provisions, and that all of the said goods and merchandise remaining on hand at the opening of navigation, as aforesaid, would be first-class and of merchantable quality, and at said time and place further represented to plaintiff that of the said goods and merchandise which the said defendant would have and own at the opening of navigation, as aforesaid, not more than 30 per cent. thereof, would consist of groceries and provisions, and it, the said defendant, at said time and place, for the purpose of inducing plaintiff to purchase all of the stock of merchandise aforesaid, which it, the said defendant, represented it would have and own at the opening of navigation, as aforesaid, at Nome, Alaska, then and there agreed with plaintiff that it, the said defendant, would sell to plaintiff all of the said goods and merchandise which the said defendant represented it would have at Nome, Alaska, at the opening of navigation as aforesaid, and which it, the said defendant, then and there represented would be merchantable and of first-class quality and of the amount and value of $75,000, and 40 per cent. or more of which the said defendant agreed should be and consist of dry goods, furnishing goods, and the merchandise above-mentioned, other than and exclusive of groceries and provisions, and that no more than 30 per cent. thereof should be groceries and provisions, at and for a price to be fixed and paid as mentioned in the written contract hereinafter set forth, and it, the said defendant, further agreed, at said time and place, that if the said plaintiff should purchase the said stock of goods and merchandise which it, the said defendant, then and there represented it would have and own in its said warehouses and stores at Nome, Alaska, at the opening of navigation as aforesaid, that it, the said defendant, would, between the date of the said con-

146 F.—4

tract of purchase and the opening of navigation, as aforesaid, sell the said goods and merchandise in the ordinary course of trade only, and not sell the same at a sacrifice or less and that, at the opening of navigation in the year 1904, the said defendant would deliver to plaintiff, at Nome, Alaska, the goods, wares, and merchandise of the kind, quality, and quantity and of the value hereinbefore stated; that the said plaintiff, relying solely upon the truth of the said representations of the said defendant, and not having any means of ascertaining the truth thereof, saving and excepting that derived from the said representations of the said defendant, did on or about the 1st day of February, A. D. 1904, agree to buy and purchase of the said defendant the goods and merchandise, with the express understanding and agreement that at least 40 per cent. thereof should consist of dry goods and furnishing goods of merchantable and first-class quality, and that not more than 30 per cent. thereof should consist of groceries and provisions, and with the further express understanding and agreement that the said defendant should not sell the said goods, which it, the said defendant, then represented it owned and had in its warehouses and stores in Nome, Alaska, save and except in the usual and ordinary course of business, and that none of said goods and merchandise should be sold at a sacrifice, or at less than cost, at the price stated and to be fixed and paid as mentioned, and in the manner set forth in the written contract hereinafter set forth; and plaintiff further alleges that he entered into this agreement, for the purchase of the said goods and merchandise, on the said representations of the said defendant that 40 per cent. or more of the said goods, wares, and merchandise should be goods other than groceries and provisions, and that not more than 30 per cent. thereof should consist of groceries and provisions, and not otherwise.

"IV. Said plaintiff further alleges that, relying solely upon the said representations of the said defendant, and with the express understanding and agreement above mentioned he, the said plaintiff, did on the 19th day of April, A. D. 1904, enter into a written contract with the said defendant in words and figures as follows, to wit:

" 'This agreement, made this 19th day of April, 1904, by and between the North American Transportation & Trading Company, a corporation of the state of Illinois, hereinafter called the seller, and Michael D. Samuels, of Nome, Alaska, hereinafter called the buyer, witnesseth, as follows: (1) The buyer agrees to buy and the seller agrees to sell all the merchandise, except liquors, cigars, tobaccos, and lumber, belonging to the seller in the warehouses and stores at Nome, Alaska, at the opening of navigation in 1904, at and for a price to be fixed as follows: To the "outside" invoiced cost shall be added the freight, both as shown by the seller's books, and from the total shall be deducted 25 per cent. thereof, the remaining 75 per cent. of such outside cost plus freight to be the price. (2) The title of all merchandise so purchased, and of all merchandise, if any, substituted therefor under the conditions of this agreement, shall remain in the seller until the purchase price of all of said merchandise has been fully paid, and said seller shall select a cashier and bookkeeper as its representative to retain possession thereof until said purchase price is fuly paid, who shall be paid by said buyer. (3) The sum of one thousand ($1,000.00) dollars, on account of said purchase price, is paid by the buyer to the seller upon the execution of this instrument, the receipt whereof is hereby acknowledged, and further sum of four thousand ($4,000.00) dollars on account of said purchase price shall be paid at the time said buyer begins to conduct the store now conducted by the seller at Nome, Alaska. The balance of the purchase price shall be paid at the rate of $7,500.00 per month, the first of such monthly payments to be made one month from the date when said buyer begins to operate said store. (4) The seller shall be further secured for the unpaid balance of said purchase price by the deposit in the store hereinafter mentioned of merchandise belonging to the buyer, and in case sales of the merchandise hereby sold shall exceed, after deducting expenses of the business, the sum of $7,500.00 per month, then such excess shall be paid on account of the purchase price, or such excess shall be used in the purchase of merchandise, to be placed in said store as security for the payment of the unpaid part of the purchase price. (5) The buyer assumes and

agrees to pay, from July 1, 1904, to July 1, 1905, the rent of $275.00 per month of the N. C. Co. store on Front street in Nome, Alaska. (6) All merchandise owned by the seller, now in the warehouses at Nome, Alaska, shall be delivered to the buyer, free of storage charges. (7) The cost of insurance upon the merchandise hereby sold, and upon all replacements thereof, shall be paid by the buyer from the time when he begins to operate said store.

"'Duly executed and delivered by the parties hereto, the day and year first above written.

> "'The North American Transportation and Trading Company,
> "'By W. H. Isom, Vice-President.                          [Seal]
> "'M. D. Samuels.                                          [Seal]'

—duly attested by witnesses. And upon the execution and delivery of said written contract the said plaintiff paid unto the said defendant the sum of $1,000 as a deposit upon the said agreement of sale, and the said defendant has not returned unto the said plaintiff any part thereof, although it, the said defendant, has violated and failed to perform its said contract and said plaintiff has demanded the return of the same.

"V. And said plaintiff further alleges that in the month of February, A. D. 1904, and immediately after said plaintiff had agreed to purchase the said stock of goods and merchandise, which were to be of the quality, quantity, and proportions as aforesaid, the said defendant, for the purpose of cheating and defrauding said plaintiff and depriving him of the benefits of said contract of purchase, caused its said stock of goods and merchandise which it then owned and had in its warehouses and stores in Nome, Alaska, and which it had agreed to deliver to the said plaintiff at the opening of navigation as aforesaid, to be sold at a great sacrifice, and at a grossly and inadequate price, and in job lots, and not in the ordinary course of business and trade, and it, the said defendant, caused to be sold all of the said dry goods, furnishing goods, and goods other than the said groceries and provisions, with a fraudulent intent and purpose of delivering unto the said plaintiff only the groceries and provisions that should remain on hand in its said warehouses and stores in Nome, Alaska, at the opening of navigation in the year 1904.

"VI. Plaintiff further alleges that he arrived at Nome, Alaska, on or about the 15th day of June, A. D. 1904, and immediately thereafter went to the warehouses and stores of the said defendant in Nome, Alaska, to take possession of the said stock of goods and merchandise, of the quality, quantity, and proportions aforesaid, under and pursuant to the terms of his said agreement with said defendant, and then and there offered and tendered to the said defendant the installment of said purchase price as mentioned in said written contract, and then and there demanded of the said defendant that it, the said defendant, deliver unto the said plaintiff the said goods and merchandise which it, the said defendant, agreed to sell and deliver unto the said plaintiff under the said contract; but plaintiff alleges that the said defendant then failed and refused, and has ever since failed and refused, to deliver unto the said plaintiff the said stock of merchandise which it, the said defendant, agreed to sell and deliver unto the said plaintiff, or any part thereof, save and except a remnant of groceries and provisions of an inferior quality,"

--and prayed for damages, special and general, in the sum of $59,500.

The answer of the plaintiff in error admitted the written contract, and that defendant in error had paid the sum of $1,000 thereon, and denied all the other averments of the complaint. It also denied that by reason of any act of the said defendant with respect to said contract, or the subject-matter thereof, plaintiff, has been damaged in any sum or amount whatever, and as an affirmative defense, and by way of counterclaim, alleged "that it made and entered into a contract precisely as set forth in paragraph 4 of plaintiff's complaint, and none other, and alleges that at all times heretofore defendant was ready to do and perform each and every condition mentioned in said contract to be by said defendant done and performed, but that said plaintiff thereafter, and ever since the execution of said contract, failed, neglected, and refused to perform the conditions of said contract to be by him done and performed," and set up a counterclaim for damages in the sum of $5,609.31.

The case was tried before a jury, a verdict was rendered in favor of defendant in error .for $3,600, and a judgment entered for said amount. The bill of exceptions recites that it "contains all the evidence introduced by the plaintiff in said cause in his case in chief." It appears that the defendant offered testimony in support of its case, but none of this testimony is embodied in the bill of exceptions.

. In the course of the charge to the jury the court instructed the jury as follows: "The question as to whether or not a written instrument shows on its face that certain matters pertaining to it are left undetermined is a question of law to be determined by the court, and I therefore instruct you that the written contract is in my opinion silent and indefinite upon the questions, first, as to the character and quantity of the merchandise mentioned therein and contracted to be sold and delivered to plaintiff; and, second, upon the question as to the manner of sale of said merchandise by defendant from the time of the execution of the written contract aforesaid to the time of the contemplated delivery of said merchandise to plaintiff. For this reason the plaintiff has been allowed to introduce oral testimony on these matters, and it will therefore be your duty to determine from all the evidence which has been submitted to you what was the contract, if any, which was entered into between the plaintiff and defendant with reference to these matters, which, as I have instructed you, are left undetermined by the written contract introduced in evidence." To which portion of said charge the counsel for the defendant then and there, and before the jury had retired for deliberation, duly. excepted, and the exception was by the court allowed.

There are 17 assignments of error to the rulings of the court in admitting testimony during the trial, and giving instructions to the jury. They are all virtually based upon the alleged proposition that the court erred in admitting oral testimony to vary the terms of the written contract.

Dudley Du Bose and J. K. Wood (Campbell, Metson & Campbell and S. D. Woods, of counsel), for plaintiff in error.

James E. Fenton, W. M. Madden, Albert Fink, M. J. Cochran, and T. M. Reed, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

The contention of the plaintiff in error is that the defendant in error should have been confined to the "written contract"; that the court erred (1) in permitting oral testimony to vary or add to the terms of the contract; (2) as to. the particular kind and quality of the goods, and the respective proportions thereof, as well as of the value thereof; and (3) by admitting oral evidence to add to the contract a warranty as to the kind, proportion, quality, quantity, value of the goods, etc., and upon these points refers the court to numerous authorities.

The general principle for which the plaintiff in error contends, that "where a written contract is plain and unambiguous on its face parol evidence is not admissible to explain or alter its meaning," is one of universal application. In Bast v. Bank, 101 U. S. 93, 96, 25 L. Ed. 794, the court said:

"No principle of evidence is better settled at the common law than that, when persons put their contracts in writing, it is, in the absence of fraud, accident, or mistake, 'conclusively presumed that the whole engagement, and the extent and manner of their undertaking, was reduced to writing.' 1 Greenl. Evid. § 275. * * * In Martin v. Berens, 67 Pa. 463, the court say: 'Where parties, without any fraud or mistake, have deliberately put their en-

gagements in writing. the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule. It has been found to be a wholesome one, and, now that parties are allowed to testify in their own behalf, the necessity of adhering strictly to it is all the more imperative.'"

See 17 Cyc. 596–598, and authorities there cited.

The general rule is well defined, with exceptions and modifications, and broadly and clearly delineated in all the text-books and illustrated by numerous decisions.

In Chandler v. Thompson (C. C.) 30 Fed. 38, 43, cited and relied upon by the plaintiff in error, the court, after quoting from Bast v. Banks, as above, and remarking that this general rule was subject to some modifications, said:

"Parol evidence of surrounding circumstances is admissible to show the subject-matter of the contract, when ambiguous or indefinite; but the express terms cannot be varied by proof of the negotiations and transactions out of which it grew, and the circumstances which surrounded its adoption. In construing the terms of a written contract, such evidence is allowable for the purpose of ascertaining the real intention of the parties, but no new obligation or duty can be imposed on a party which is not warranted by a fair and reasonable construction of the words of the instrument."

The question presented in this case is not as to the correctness of the principles of the general rule, but whether it is, under the facts of this case, applicable. The contention of the defendant in error is that the action is founded upon a breach of contract which was originally verbal and entire, and a part only of this contract was reduced to writing; that the defendant in error does not rely upon the written contract alone, but upon the whole contract; that the purpose and effect of the oral testimony produced at the trial was not to vary the terms of the portions of the contract which were reduced to writing, but to show the entire contract.

Keeping in view these contentions of counsel, it is deemed proper to state that the testimony on behalf of the defendant in error tended to sustain the averments of his complaint. It is strong, direct, positive, and clear. Among other matters it shows that on the day after the written contract was executed, W. H. Isom, manager of the plaintiff in error, sent a telegram to its agent at Nome, Alaska, as follows:

"Chicago. Ills., April 20–22, 1904.

"J. E. Ramar, Care N. A. T. & T. Co., Nome, Alaska: Arrangements made sell all stock remaining opening navigation discount below cost. therefore make every effort dispose all possible before that time for cash or little below if necessary, particularly lumber; reduce expenses; confidential.

"W. H. Isom."

When the defendant in error arrived at Nome about the middle of June, 1904, he asked Ramar what he did with the dry goods, clothing, and shoes, and Ramar replied that he had sold them. Several witnesses testified that during the latter part of April, and in the month of May, 1904, they had bought from the plaintiff in error at its store in Nome, bales of carpets, bales of dry goods, mining hose, and different things of that kind, and loads and cases of hardware, out of the warehouses. Authority to act in such a way is surely not to be found

even in the written part of the contract. Is it not apparent that in making a contract of this magnitude and character there must have been some understanding and agreement concerning this matter? The sixth clause of the written contract, "All merchandise owned by the seller, now in the warehouses at Nome, Alaska, shall be delivered to the buyer, free of storage charges," taken literally, according to its terms, would seem to prohibit the plaintiff in error from making any sale of goods whatever. In the very nature of the transaction, is it not reasonable to believe, as testified to by the defendant in error, that the plaintiff in error would have under the contract, the right to sell "from the said stock of merchandise in the ordinary and usual course of trade and business"? The written contract is certainly not clear or unambiguous upon this subject. It is incomplete and indefinite. The written contract is silent upon other matters. It does not specify the particular character, quality, or extent of the goods that were sold, to be delivered to the buyer on the opening of navigation in 1904.

Upon examination of the authorities bearing upon the legal principles applicable to this case, we find that the courts have held that where, in the application of a contract to its subject-matter, an ambiguity or uncertainty arises which cannot be removed by an examination of the agreement alone, parol evidence of the circumstances under which it was made and of statements made in the negotiations which preceded it may be admitted to resolve the ambiguity, and to prove the real intention of the parties (Kilby Mfg. Co. v. Hinchman-Renton F. P. Co., 132 Fed. 957, 961, 66 C. C. A. 67; Davies v. Bierce [La.] 38 South. 488, 492); that it is also competent to show all the transactions at the same time between the parties, only a part of which is in writing (Chemical Company v. Moore, 61 S. C. 166, 169, 39 S. E. 346; Graffam v. Pierce, 143 Mass. 386, 9 N. E. 819; Sutton v. Griebel, 118 Iowa, 78, 91 N. W. 825, and authorities there cited; Schoen v. Sunderland, 39 Kan. 758, 761, 18 Pac. 913; Juilliard v. Chaffee, 92 N. Y. 529, 535; Harman v. Harman, 70 Fed. 894, 897, 17 C. C. A. 479; Patek v. Waples, 114 Mich. 669, 671, 72 N. W. 995).; that where a written instrument, executed pursuant to a prior verbal agreement, does not express the entire agreement or understanding of the parties, it is competent to show by parol testimony what the real contract was (Barcus v. Gates (C. C.) 130 Fed. 364, 367; De St. Aubin v. Marshall Field & Co., 27 Colo. 414, 419, 62 Pac. 199; Neal v. Flint, 88 Me. 72, 82, 33 Atl. 669; Terry v. Railroad Co., 91 N. C. 236, 241; Moore v. Barber A. P. Co., 118 Ala. 563, 572, 23 South. 798; Niles v. Sire (Sup.) 94 N. Y. Supp. 586; Mt. Vernon Stone Co. v. Sheeley, 114 Iowa, 313, 316, 86 N. W. 301; Anderson v. National Surety Co. 196 Pa. St. 288, 46 Atl. 306); that, where the written memorandum of a contract of sale is incomplete, parol evidence is admissible to prove there was a verbal understanding at the time, and conditions upon which the seller would have the right to sell at retail until the completion of the sale and delivery of the property (Quick v. Glass, 128 Mo. 321, 30 S. W. 1031); that parol evidence is admissible where it tends to prove an independent, collateral fact about which the written contract is silent. (Fusting v. Sullivan, 41 Md. 162, 179; Hines v. Willcox, 96 Tenn.

148, 153, 33 S. W. 914, 34 L. R. A. 824, 832, 54 Am. St. Rep. 823; Hardwood Log Co. v. Coffin, 130 N. C. 432, 435, 41 S. E. 931; Windsor v. Railway Co. [Wash.] 79 Pac. 613).

The general rule as to the admissibility of parol evidence in connection with a written contract (covering a great variety of cases) has been stated as follows:

"Where a written instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to the matter not provided for in the writing." 17 Cyc. 741, 742.

In Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 165, 167, 36 Atl. 737, 57 Am. St. Rep. 626, the court said:

"The existence of a contemporaneous parol agreement between the parties under the influence of which a note or contract has been signed, which is violated as soon as it has accomplished its purpose in securing the execution of the paper, may always be shown when the enforcement of the paper is attempted. It is a plain fraud to secure the execution of an instrument by representations as to the manner in which payment shall be made, differing in important particulars from those contained in the paper, and, after the paper has been signed, attempt to compel literal compliance with its terms, regardless of the contemporaneous agreement without which it would never have been signed at all."

There is no conflict in the authorities upon the matters we have discussed. In a previous portion of this opinion we pointed out this fact by a reference to the case of Chandler v. Thompson, where the respective rules were recognized. In Seitz v. Brewers' R. M. Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837, which is cited and relied upon by the plaintiff in error to prove that the court below erred in giving the instruction complained of in relation to the silence of the written contract, the language of the opinion relied upon is as follows:

"Whether the written contract fully expressed the terms of the agreement was a question for the court, and since it was *in this instance complete and perfect on its face, without ambiguity, and embracing the whole subject-matter*, it obviously could not be determined to be less comprehensive than it was. And this conclusion is unaffected by the fact that it did not allude to the capacity of the particular machine. To hold that mere silence opened the door to parol evidence in that regard would be to beg the whole question."

We have italicized certain portions to show that the contract in that case was directly opposite in its character from the one under consideration in this case, and the change in the facts controlled the decision. In the course of the opinion, it is said:

"Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them."

In Fire Ins. Association v. Wickham, 141 U. S. 564, 576, 12 Sup. Ct. 84, 87, 35 L. Ed. 860, the court said:

."We have no disposition to overrule or qualify in. any way the general and familiar doctrine enforced by this court in repeated decisions, from the case of Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed. 589. decided in 1823, to that of Seitz v. Brewers' Refrigerating Company, 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837, decided at the present term, that parol testimony is not admissible to' vary, contradict, add to or qualify the terms of a written instrument. The rule, however, is subject to numerous qualifications, as well established as the general principle itself, among which are that such testimony is admissible to show the circumstances under which the instrument was executed."

Further comment is unnecessary. An examination of the whole record discloses no error.

The judgment of the District Court is affirmed, with costs.