## LILIENTHAL et al. v. CARTWRIGHT.

(Circuit Court of Appeals, Ninth Circuit. October 18, 1909.)

No. 1,664.

1. EVIDENCE (§ 458*)—CONTRACTS—INTENTION OF PARTIES.

In an action on a written contract, by which defendant, who owned a hop farm, agreed to sell to plaintiff the crop on such farm for the ensuing two years, the defense was that it was orally agreed, both before and after the contract was signed, that it should be void or should terminate in case he should sell his land, and that he did sell it. *Held*, that it was not error to admit evidence of a similar understanding at the time of the making of a contract two years before between the same parties, and that on the sale by defendant of a part of his land the contract was modified accordingly, where the jury were instructed that such evidence was not to be considered on the question whether the contract in suit was modified, but only to aid in determining the condition of the minds of the parties when it was made, and the probability that the modification claimed would be assented to by plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2083; Dec. Dig. § 458.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ESTOPPEL (§ 78*)—ACTION FOR BREACH—DEFENSES.

Defendant entered into a contract to sell to plaintiffs the hops raised by him on his farm for the ensuing two years. *Held*, in an action to recover damages for breach of such contract, that defendant was entitled to show as an estoppel that it was agreed when and after the contract was made that it should terminate and not be enforced in case he sold his farm, and that when he contemplated such sale he was assured by plaintiff of the same thing, and made the sale in reliance on such assurance.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

In Error to the Circuit Court of the United States for the District of Oregon.

Action by Albert Lilienthal and Philip N. Lilienthal, partners as Lilienthal Bros., against J. R. Cartwright. Judgment for defendant, and plaintiffs bring error. Affirmed.

On March 7, 1902, the plaintiffs in error, who were plaintiffs in the court below, entered into two contracts with the defendant in error, defendant in the court below, by the terms of which the latter agreed to complete the cultivation of about 35 acres of land in Harrisburg, Or., and harvest, cure, and bale the hops grown thereon for the two years of 1903 and 1904, and deliver the same to the plaintiffs between the 1st and 31st days of October of the respective years at the agreed price of 10 cents per pound. Each contract provided for the delivery of 30,000 pounds of hops grown on the premises described, and such hops should not be the product of fuggle vines, nor a first year's planting, etc. In 1903, and again in 1904, plaintiffs offered to perform their part of the contracts for the respective years by tendering payment therefor; but the defendant refused to perform his part of the contracts by the delivery of the hops. Thereafter plaintiffs brought two separate actions against the defendant to recover in each case damages for breach of the particular contract.

The defense in each case, as set up in the answer, was that after the contract was made, on the 7th day of March, 1902, "the plaintiffs represented and agreed to and with the defendant that if the defendant should sell the premises, or any part thereof, described in the said contract, that the said contract should be and become void and inoperative as to the land so sold, and then and there agreed with the defendant that he might sell the said lands described in the said contract, and that the defendant would be released by the said sale from any obligation to the plaintiffs under or by virtue of said contract." The defendant sold the farm in question on the 8th day of November, 1902, and did not thereafter cultivate the same, or raise any hops thereon, or have any interest in the crops that were raised thereon, and did not deliver any hops to the plaintiffs. It was alleged in the defendant's answer that plaintiffs ought not to be permitted to allege that the contracts described in the complaint were either of them in force at any time after the 8th day of November, 1902, or to allege or prove that the defendant was obliged, under the terms of said contracts, to deliver to the plaintiffs the hops raised upon the said premises, or any part thereof, or to allege or prove that the defendant was guilty of any breach of the terms or provisions of said contracts, or to allege or prove that the plaintiffs had been damaged in any sum whatever by the alleged breach of said contracts relied on in the complaint.

The cases were by order of the court consolidated and tried together before the same jury, resulting in a verdict for the defendant in each case. In the course of the trial the court admitted testimony, over the objection of the plaintiffs, tending to show that with respect to a prior agreement between the parties, entered into in December, 1900, respecting the sale of hops, the agent of the plaintiffs told the defendant that the contract would be void or at an end if he sold his land. The court also admitted testimony, over the objection of the plaintiffs, tending to show that before and after the signing of the

contracts on March 7, 1902, the agent of the plaintiffs told the defendant that if he sold his land that would end the contracts for the delivery of the hops.

J. N. Teal and Wirt Minor, for plaintiffs in error.

M. L. Pipes, J. K. Weatherford, and John R. Wyatt, for defendant in error.

Argued before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The errors assigned may be reduced to two questions—the first relating to the admission of evidence tending to prove a statement alleged to have been made by the agent of the plaintiffs to the defendant in December, 1900, at the time of making prior contracts for the sale of hops, to the effect that the contract (referring to the original contract) would be void or at an end if the defendant sold the land; and, second, relating to the admission of evidence tending to prove statements alleged to· have been made by the same agent of the plaintiffs to the defendant, substantially to the same effect, made both before and after the contracts for the years 1903 and 1904 were executed on March 7, 1902. Both of these questions arise in the application of the common-law rule against the admission of parol testimony to vary the terms of a written contract. The rule in the state of Oregon, as it has been enacted into law, is in the following words:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases."

The exceptions are not material to the present case, and therefore need not be stated. With respect to the first question the court admitted the testimony to which objection was made, not as tending to vary any of the terms of the written contract, but for the single purpose of aiding the jury in determining the condition of the minds of the parties, or of the plaintiffs, and their disposition towards entertaining such a proposition, or assenting to consider the original contract void, should a sale of the premises be made by the defendant, and the testimony was so limited by the court in its instructions to the jury. The court said:

"I further instruct you that the written contract, in so far as it pertains to this controversy or has relation thereto, was concluded when the same was signed by Cartwright. All the terms of the contract were agreed upon at that time, and by concert of action of the parties reduced to writing, and when so formulated it is conclusively presumed to contain all that the parties intended to have introduced therein. No other agreement than such as is evidenced by the contract can the parties rely upon as being made prior to the time such signing was had."

The court further instructed the jury with respect to this testimony:

"I have permitted testimony to go to you touching conversations that might have been had between the parties, relative to the disposal of the land by Cartwright, prior to the time when the contract was concluded. This should be considered by you, not as tending to vary any of the terms of the written contract, for it cannot be so varied, but for the single purpose of aiding you in determining the condition of the minds of the parties, or of the plaintiffs, and their disposition towards entertaining such a proposition, or assenting to

considering the original contract void, should a sale of the premises be made by Cartwright. Such an arrangement, if one was had subsequent to the signing, must be substantiated and proven by what was done and said also subsequent to that time, and the defendant's case must be made on that basis, and none other."

The rule under which this testimony was admitted is analogous to the rule that admits parol testimony to show the situation of the parties at the time the writing was made and the circumstances under which it was executed. Fire Insurance Association v. Wickham, 141 U. S. 564, 576, 12 Sup. Ct. 84, 35 L. Ed. 860; McElroy v. British American Assur. Co., 94 Fed. 990, 997, 36 C. C. A. 615; North American Transportation Co. v. Samuels, 146 Fed. 48, 55, 76 C. C. A. 506.

It appears from the evidence in the record that the circumstances under which the contracts in suit were made arose out of this situation of the parties: In the year 1900 the defendant was the owner of 55 acres of land, of which about 45 acres were in hops; that in December, 1900, he entered into five written contracts with the agent of the plaintiffs for the sale of the hops on this land for the following years; and the evidence tended to show that before the defendant signed these contracts he was told by the agent of the plaintiffs that the written contracts would not prevent him from selling the land—that the contracts would be at an end. It appears that he did sell some portion of the land—probably about 20 acres, though the evidence is not clear upon that point—and the original written agreements were surrendered up and new agreements executed in their place.

This testimony as to the statement of the plaintiffs' agent was admitted, not as tending to vary any of the terms of the written contracts, but as tending to show that a statement upon a collateral subject relating to the sale of the land was one that had been made before by the plaintiffs' agent, and under similar circumstances might reasonably be made the subject of a verbal agreement with respect to the contracts in suit. In this aspect we think the evidence was properly admitted.

With respect to the second question the defendant set up in his answer the verbal agreement with the agent of the plaintiffs to the effect that if the defendant should sell the premises, or any part thereof, described in the written contracts of March 7, 1902, then the said contracts should become void and inoperative as to the land so sold, and that in pursuance of such agreement and in reliance upon its terms defendant sold the land, and did not thereafter cultivate the same, or have any interest in the crops raised upon the land. The defendant relied upon the evidence of these facts as an estoppel. The evidence was admitted by the court, and, we think, properly.

The court instructed the jury upon this question as follows:

"Now, to advance another step in the course of the pleadings and trial, the defendant has set up by his answer that the parties, namely, himself and the plaintiffs, had an agreement or understanding between them, after the contract denoted by the writing had been concluded, that if the defendant should sell the land the written contract would be and become nugatory and void, and its performance would not be insisted upon. It was within the power and privilege of the parties to modify the contract, either by writing or verbally, after it had been concluded, and such modification would be binding as the original

contract. So it was within the power and privilege of the plaintiffs to agree or arrange with the defendant that he would be privileged to sell the land upon which the hops were to be grown, and that thereafter, if sold, the parties should consider the contract as at an end. And it is a question for you to determine whether such an understanding was had subsequent to the time of concluding the original contract. The defense thus set up proceeds upon the idea or ground of estoppel; that, such an understanding having been had, if you so find, the defendant acted thereon and sold the premises; and that, the defendant having been thus led to act through the agreement thereto by the plaintiffs, plaintiffs should not now be permitted to assert the contrary, and to insist upon the performance by defendant of any conditions of the original contract."

The law is here clearly and correctly stated. Was the testimony to which the defendant refers properly admitted? We think it was. The defendant was the owner of a tract of land upon which he had proposed to raise hops, and he had entered into an agreement with the plaintiffs for the sale of these hops for two successive years. Such an agreement might interfere with the sale of the land. Defendant testified that he said to plaintiffs' agent:

"Suppose I sell the rest of the land; the contract is void?"

To which the agent replied:

"Yes; that is the end of our contract. You don't have to deliver no hops only what's growed on that piece of ground."

The defendant further testified that subsequently he told the agent he was going to sell the property, that he had already made a deal, and that he would deliver no more hops, and the agent said "that it was all right." The plaintiffs' agent denied that he had any such conversation with the defendant; but whether any such conversation took place was, of course, a question for the jury.

If, however, defendant's testimony is true it tended to establish the fact that plaintiffs are now asserting a claim which they or their agent induced the defendant to believe they would not rely on, and upon the faith of which defendant placed himself in a position where he could not carry out his contracts. In Cairncross v. Lorimer, 3 Macq. 828, Lord Campbell said:

"The doctrine * * * is to be found, I believe, in the laws of all civilized nations, that if a man, either by words or by conduct, has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words or to the fair inference to be drawn from his conduct."

In Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, the Supreme Court of the United States refers to the case of Faxton v. Faxon, 28 Mich. 159, as an authority upon this subject. In that case a mortgagee holding several mortgages prevailed on a son of the deceased mortgagor, then intending to remove to a distance, to remain on the premises and support the family, by assuring him that the mortgages should never be enforced. The son supported the family, and the property grew in value under his tillage. After a lapse of several years the mortgagee proceeded to foreclose. He was held to be es-

topped by his assurances, upon which the son had acted. The Michigan court said:

"The complainant may have estopped himself without any positive agreement, if he intentionally led the defendants to do or abstain from doing anything involving labor or expenditure to any considerable amount, by giving them to understand they should be relieved from the burden of the mortgages. In Harkness v. Toulmin, 25 Mich. 80, and Truesdale v. Ward, 24 Mich. 117, this principle was applied, in the former case to the extent of destroying a chattel mortgage, and in the latter of forfeiting rights under a land contract, where parties were led to believe they were abandoned. There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. The rule does not rest on the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

This defense is available in law. Kellogg-Mackay-Cameron Co. v. Havre Hotel Co. et al., 173 Fed. 249.

The judgment of the Circuit Court is affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes