### STANDARD SCALE & SUPPLY CO. v. REITER.

(Circuit Court of Appeals, Seventh Circuit.    January 2, 1912.
Rehearing Denied May 7, 1912.)

#### No. 1,812.

1. EVIDENCE (§ 448*)—PAROL EVIDENCE AFFECTING WRITING—EXPLAINING OBSCURITIES IN WRITING.

While parol evidence is not admissible to vary the terms of a written contract, it is admissible to explain what is obscure or ambiguous in the writing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 448.*]

2. EVIDENCE (§ 463*)—PAROL EVIDENCE AFFECTING WRITING—SHOWING MODE OF PERFORMANCE OF CONTRACT OF EMPLOYMENT.

In an action for breach of a written contract by which plaintiff was employed as manager of a branch business to be established in Chicago by defendant, by his alleged wrongful discharge, defendant was entitled

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to show a contemporaneous parol agreement between the parties in respect to the duties to be performed by plaintiff as such manager.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2140–2143; Dec. Dig. § 463.*]

In Error to the Circuit Court of the United States for the Northern District of Illinois, Eastern Division.

Action at law by Edward Reiter against the Standard Scale & Supply Company. Judgment for plaintiff, and defendant brings error. Reversed.

Defendant in error, a New York corporation, hereinafter designated as plaintiff, brought suit at law against plaintiff in error, hereinafter designated as defendant, to recover damages for alleged breach of contract made and entered into on February 23, 1904, between defendant's assignor and plaintiff, and being in the words and figures following, viz.:

### "Memorandum of Agreement.

"Between the Standard Scale & Supply Co., Limited, of Pittsburgh, Pa., party of the first part, and Edward Reiter, party of the second part.

"The party of the first part is to open a branch house in the city of Chicago, Ills., for the sale of its scales and other goods, such as gasoline engines, steam engines, boilers, steam pumps, dynamos, motors, railway supplies, etc., and have engaged the party of the second part as manager for the period beginning March 1st, 1904, and ending December 31st, 1911; his compensation to be as follows: Thirty-six hundred ($3,600) dollars per annum, payable in monthly installments of three hundred ($300) dollars, and 20 per cent. of the net profits, the latter to be paid at the end of each year, as soon as the net profits can be ascertained.

"The cost of scales to be based on schedules to be made up by party of the first part, and all other goods to be charged to the Chicago house at actual cost.

"The territory under the jurisdiction of the Chicago house shall be as follows: Indiana—That portion of the state west of 86 deg., 30 Min. longitude, also that portion of the state on line and North of Wabash Railway running through Butler and Logansport.

"Michigan—That portion of the state located west of 85 deg. longitude.

"Also all of the following states: Illinois, Wisconsin, Minnesota, North Dakota, South Dakota, Iowa, Kansas, Nebraska, Arkansas, Missouri, Oklahoma and Indian Territory.

"All mail orders, inquiries and prospects received from the territory mentioned are to be referred to the Chicago house.

"The said party of the second part is to give his best services for the promotion and welfare of the business and be subject to the instructions of the said party of the first part.

"Entered into and signed this 23rd day of February, 1904.

"[Signed]  The Standard Scale & Supply Co. Limited.
    "By F. B. Gill, Chairman.
"By William H. Black, Secretary.
        "[Signed]  Edward Reiter."

The declaration alleges that, pursuant to the terms of the contract, the Scale & Supply Company, Limited, opened up such branch house in Chicago for the sale of said designated merchandise at about the date of the contract; that plaintiff entered upon the performance of the contract, and then and there became the manager of said business, and so continued until about June 1, 1904, when defendant succeeded to the business and property of the Standard Scale & Supply Company, Limited, including all rights and obligations under said contract assumed by the assignor thereof, among which was the obligation to pay plaintiff $300 a month as wages. It is further alleged that on failure of defendant to pay plaintiff's salary

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for May, June, July, August, September, and October, 1906, plaintiff brought suit in the circuit court of Cook county and recovered judgment for the amount claimed, which was confirmed on appeal; that, on further default of defendant, plaintiff brings this suit to recover salary for November and December, 1906, and for the years 1907 and 1908, and for January and February, 1909, 28 months, at $300 per month, with interest at 6 per cent. per annum, amounting to $472.50, to the plaintiff's damage of $10,000. Affidavit of claim is attached.

On March 29, 1909, the cause was removed to the Circuit Court of the United States. On March 17, 1910, plaintiff filed an amended declaration from which it appears that on November 3, 1906, defendant discharged plaintiff from its employ, as is alleged, without cause. The amended declaration charges that plaintiff was thereby deprived of $28,800 salary, and $30,000 in addition thereto as his share of the net profits of the business per annum. These two items the declaration aggregates at the sum of $50,000, at which it lays its damages.

Thereafter defendant appeared to the amended declaration and filed the general issue. On trial had, the jury returned a verdict in favor of plaintiff for the sum of $11,000. Motion for new trial was overruled, and judgment entered for $11,000 and costs, from which judgment this writ of error is prosecuted. A number of errors are assigned by defendant, the only one of which we deem it necessary to consider at this time reads as follows, viz.: "The court erred in sustaining plaintiff's objection to the following question propounded to Edward Reiter, as a witness for the defendant, on direct examination: 'Mr. Reiter, did you have any conversation with any of the officers of the defendant company at or about the time of the making of this contract with reference to the manner in which the machinery lines mentioned in that contract were to be sold and the representation of them obtained?'"

F. W. Winkler and W. S Oppenheim, for plaintiff in error.

Edwin M. & Raymond M. Ashcraft and Edwin M. Ashcraft, Jr. (Edwin M. Ashcraft, of counsel), for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] The assignment of error above set out challenges the admissibility of evidence offered for the purpose of elucidating some of the provisions of the contract, particularly those which refer to the scope and method of the business therein contemplated.

No rule of law is better settled than that which denies the right of parties to a contract to vary its terms by reference to conversations had before it was concluded and signed. 1 Greenleaf, Ev. § 275; White v. National Bank, 102 U. S. 658, 26 L. Ed. 250; Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665; Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647; Dewitt v. Berry, 134 U. S. 315, 10 Sup. Ct. 536, 33 L. Ed. 896. But it has never been the law that contemporary or precedent facts might not be introduced by parol or otherwise to make plain some obscure or indefinite feature of the contract.

In Lowrey v. Hawaii, 206 U. S. 206, 27 Sup. Ct. 622, 51 L. Ed. 1026, the court approves the language of Bradley v. Washington A. & G. Steam Packet Co., 13 Pet. 89, 10 L. Ed. 72, with reference to extrinsic evidence as follows: It (extrinsic evidence) was applied in some cases to—

"ascertain the identity of the subject; in others, its extent; in some, to ascertain the meaning of a term, where it had acquired by use a particular

meaning; in others, to ascertain in what sense it was used, where it admitted of several meanings; but in all the purpose was the same—to ascertain by this medium of proof the intention of the parties, where, without the aid of such evidence that could not be done so as to give a just interpretation of the contract."

In the case first cited, the court was confronted with what it termed the ambiguous words, "sound literature and solid science" and "inculcation of general learning and knowledge." It was held that parol evidence should be admitted for the purpose of ascertaining the intention of the parties at the time.

In Morton v. Jackson, 1 Smedes & M. 501, 40 Am. Dec. 107, extrinsic evidence was admitted to show the meaning of the term, "swamp land," as used in a deed. It was permitted in New Jersey Zinc Co. v. Boston F. Co., 15 N. J. Eq. 466, to show the meaning of the term "zinc," in deed conveying "zinc ores," and in Roberts v. Short, 1 Tex. 378, to show what was meant by the term, "Texas money," as used in a note.

In Walker v. Riley & Co., 6 Ga. App. 519, 65 S. E. 301, the court admitted parol evidence to explain the words, "local manager." "Parol evidence thus offered for the sole purpose of defining the meaning of the title conferred upon the employé is not," says the court, "violative of the rule which forbids that the terms of a valid written contract be varied or contradicted by parol evidence."

Where an employé was engaged to give "his entire business service" to his employer, parol evidence was admitted for the purpose of showing what was the understanding and intention of the parties. Davis v. Dodge, 126 App. Div. 469, 110 N. Y. Supp. 787.

The Circuit Court of Appeals for the Ninth Circuit held in North Am. Transportation & Trading Co. v. Samuels, 146 Fed. 48, 76 C. C. A. 506, that parol evidence was admissible to show the kind and quality of goods contracted to be sold, the proportions thereof, and the manner in which it was contemplated the seller should make sales from the stock prior to delivery—citing Fire Ins. Association v. Wickham, 141 U. S. 564, 576, 12 Sup. Ct. 84, 35 L. Ed. 860.

Many other cases might be cited to support the doctrine that parol evidence is admissible to explain what is obscure or ambiguous in a contract.

[2] In the present contract, it is provided that the defendant has "engaged the party of the second part" (plaintiff) "as manager," etc. It was sought by the question set out in the assignment of error above quoted to disclose what were the duties of plaintiff as manager. It appears from the record that plaintiff had a wide experience in the handling of certain so-called side lines, while defendant's Chicago dealings theretofore were confined practically to the scale business. Plaintiff says:

"The obtaining of the representation of these side lines was the object of opening the store in Chicago. I think that was the object of my employment as manager." (Record, p. 34.)

From this it will be seen that there is in the record a suggestion, at least, of the unusual character of plaintiff's duties as manager.

The circumstances create a situation which calls peculiarly for enlightenment as to what was the scope of these duties, with reference to the manner in which the machinery lines mentioned in that contract were to be sold and representation of them obtained. It was therefore error to sustain plaintiff's objection to the question set out in the assignment of errors above quoted.

The judgment of the trial court is reversed, with direction to grant a new trial.