## Tenant *et al. versus* Tenant, Administrator, etc.

1. A note payable at the residence of the payee in West Virginia and delivered there for goods purchased, is a West Virginia contract and the law of that state must govern in determining its validity, obligation and construction.

2. The right of a surety upon such a note to discharge his liability by notice to the creditor to pursue the principal debtor is an incident of the contract of suretyship and must therefore be determined by the law of the place of the contract.

3. A surety upon a note cannot set up a defence on a suit against him by the administrator of the payee, that the plaintiff, after the note fell due, paid over money to the principal debtor which he owed him individually and did not apply the same to the payment of the debts to the estate.

4. The laws of another state may be proved by means of a printed volume purporting to be printed by authority and to contain the laws of that state.

October 8th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Greene county:* Of October and November Term 1885, No. 170.

Debt, by Abraham W. Tenant, administrator of the estate of William Tenant, deceased, against Peter Tenant and Norval Brown, to recover $130.82 with interest from July 26th, 1879, on a note under seal.    Plea, *nil debet.*

On the trial before INGHRAM, P. J., the following facts appeared: William Tenant, a citizen of the state of West Virginia, died in Monongalia county in that state during the month of June, 1869.    The plaintiff took out letters of administration upon his estate and had a public sale of the personal property of the deceased in the fall of 1869.    At the sale Andrew Tenant, a son of William Tenant, purchased certain articles, for which he gave the following note: "Nine months after date, we, or either of us, promise to pay to A. W. Tenant, administrator of the estate of William Tenant, deceased, $130.52, for value received, as witness our hands and seals this 26th day of October, 1869."    Signed, "Andrew Tenant, Norval Brown, Peter Tenant."    Andrew Tenant, the principal, and Brown, one of the sureties, were residents of and signed the note in Pennsylvania.

Andrew Tenant died insolvent in 1879, and subsequently this suit was brought against the sureties on this note.

The defendants did not deny the execution of the note, but offered evidence to show that, after the note fell due, Brown, one of the defendants, told the plaintiff on two different occasions to proceed and collect the note from the principal and that unless he did so they would not stand good for it any longer; they also showed that the principal was then able to pay the note.

Brown also testified that he subsequently sent word by one G. F. Cooke to plaintiff "that Andrew Tenant had about completed the delivery of 1,000 cross-ties at the railroad, which would amount to over $300, and for him to come out now and get the money that was due him on Andy's note that he, Brown, and Peter Tenant were bail on; that Andy was drinking up his money and running through with his property, and that if he, plaintiff, did not come and make his money, that he, Brown, would not stand bail on the note any longer."    Cooke testified that he delivered the message in those words.    Some months afterwards Brown sent a similar message by Cooke to plaintiff. These notices were all parol.

The defendants then offered to prove by Brown and other witnesses "that after the note in suit was given, Andrew Tenant, the principal in said note sold to A. W. Tenant, the plaint-

[Tenant *v.* Tenant.]

iff in this suit, an interest in a farm in West Virginia, for which he, A. W. Tenant, agreed and did pay said Andrew Tenant the sum of $400. This to be followed by proof that A. W. Tenant is and was at that time in affluent circumstances. This is offered for the purpose of showing that the plaintiff had in his hands sufficient money of the principal in this note to extinguish the note, and failing to apply it to the same, the defendants' sureties are discharged from the payment thereof."

The plaintiff objected to the introduction of the evidence offered for the following reasons: "First, it being admitted that Andrew Tenant is deceased and the evidence offered relating to a transaction occurring during his lifetime, this witness being the defendant in the present suit is incompetent to testify to such transaction. Second, the note in suit being a note held by the plaintiff in his character of administrator of the estate of William Tenant, deceased, and in trust for that estate, the plaintiff was not bound, and could not properly mingle his individual transactions with his trust transaction by the application of one debt to another. Third, the debt, if there were a debt, which A. W. Tenant, the plaintiff, owed to Andrew Tenant, was an individual debt and was not a proper set-off against the present claim, which was due the estate of William Tenant, deceased."

Objections sustained and evidence excluded. Exception. (Sixth assignment of error.)

The defendants further offered to prove by Brown "that in a conversation or conversations with A. W. Tenant, the plaintiff in this suit, he admitted to the witness that he had purchased from Andrew Tenant, the principal in this note, this interest in the farm for which he was to pay from four to five hundred dollars, and that this was after this note was given, and before the death of Andrew Tenant, for the purpose of showing that the plaintiff had in his hands sufficient money of the principal in the note to extinguish the note, and that he failed to apply the same to the note, thereby discharging the surety from the payment thereof." Objected to for the same reasons as above. Objections sustained. (Seventh assignment of error.)

The plaintiff in rebuttal offered to read in evidence from the Code of West Virginia published pursuant to law, an Act of Assembly passed prior to the giving of the note in suit, relating to the notices to be given by sureties to creditors, and requiring that such notices shall be in writing. Offered for the purpose of showing that the plaintiff was not bound to regard any of the notices alleged to have been given him by the defendant Brown, and his failure to so regard them constitutes no defence by Brown.

[Tenant *v.* Tenant.]

The defendants objected on the ground that the evidence offered is incompetent and irrelevant, this being an action brought in the state of Pennsylvania, it is governed by the laws of Pennsylvania. Defendants afterwards withdrew their objection, reserving the right to have this question raised in a point to be submitted to the court.

Plaintiff requested the court to instruct the jury as follows:

" 1. If you find that William Tenant, the plaintiff's intestate, was a citizen and resident of the county of Monongalia, West Virginia, at the time of his death; that letters of administration upon his estate were issued to A. W. Tenant, the plaintiff, by the proper authorities of said county; that the plaintiff, in his character of administrator, sold property belonging to said estate to one of the makers of the note in suit, and received from him the said note for the price thereof; that all this occurred in said county; that the plaintiff and Peter Tenant, one of the makers of said note, were then and still are residents and citizens of said county; then the question of the sufficiency of the notice relied on by said Brown is to be determined by the law of West Virginia." Answer. "Affirmed." (First assignment of error.)

" 2. If the facts be as stated in the foregoing point, and if, by the law of West Virginia as it existed at the time the notices by the defendant Brown were given, required that such notices should be in writing, then the plaintiff would not be bound to pay any attention to said notices, and his failure to act upon them would constitute no defence in this case, it not being claimed that the said notices, or any of them, were in writing." Answer. "Affirmed." (Second assignment of error.)

The defendants requested the court to charge, *inter alia*, as follows:

" 1. If the jury believes that Norval Brown gave notice to A. W. Tenant, the creditor, to proceed and collect the money on this note of Andrew Tenant, the principal in the note, otherwise he would consider himself discharged from his obligation, and that such notice was given prior to the 1st day of January, 1875, it is not absolutely requisite that such notice should be in writing, and if the notice were sufficient in terms the defendants are discharged from liability on the note and the plaintiff is not entitled to recover." Answer. "Refused." (Fourth assignment of error.)

" 2. If the jury believes the evidence of the defendants the notice proven is sufficient in law. And it being also in evidence that the principal debtor from the time said note was given in 1869, for a period of six or seven years—until 1876 or 1877—was possessed of sufficient personal and real property,

over and above all exemptions, to pay said claim, it became the imperative duty of the plaintiff to bring his suit and make an honest endeavor to collect said note; and if he did not do so, the surety is discharged and the plaintiff cannot recover against him." Answer. "Refused." (Fifth assignment of error.)

"8. The plaintiff having failed to properly prove the Statutes of West Virginia by showing the certificate of the Secretary of State, the custodian of the original laws of the state, and having failed to show that the Statute offered in evidence was in force at the time the notice was given to Mr. Tenant, the plaintiff, to proceed and collect the note, or at the present time, there is no proper evidence before the jury as to what the Statutes of West Virginia are on the subject of notice, and in the absence of any evidence showing a conflict of laws in Pennsylvania and West Virginia in this respect, the laws of Pennsylvania must govern this case." Answer. "Refused." (Eighth assignment of error.)

The court instructed the jury, *inter alia*, as follows: "We instruct you that, if you should find from the evidence that the defendant, Norval Brown, or the defendants, Peter Tenant and Norval Brown, signed this note as claimed by the plaintiff and not denied by the defendants, and that the notices were not given as required by the laws of West Virginia, in writing— and it is not claimed by the defendant that the notices were given in writing—and should find that the amount of the note claimed by the plaintiff is now due, the plaintiff would be entitled to the amount of that note with interest from that time down to the present."

Verdict for plaintiff for $245.89 and judgment thereon. Defendants then took this writ, assigning for error the exclusion of the evidence, the answers to the points and the portion of the general charge, as above noted.

*R. F. Downey* (*A. A. Purman* with him), for plaintiffs in error.—For the purpose of this argument it may be conceded that the laws of West Virginia require the notice from a surety to a creditor to proceed and collect the money off the principal debtor, to be in writing. In Pennsylvania, prior to the passage of the Act of 14th May, 1874, (Purd. Dig., 862,) it had been frequently held that the surety might relieve himself by giving parol notice to the creditor to proceed and make his money or he would not stand bound any longer: Strickler *v.* Burkholder, 11 Wr. 476; Wetzel *v.* Sponsler's Exr's, 6 Harris, 460.

This was the settled law in this state at the time of and for a considerable time after the notices in this case were given, however it may have been changed by the Act of 14th May,

[Tenant v. Tenant.]

1874. Whatever relates to the remedy to be enforced must be determined by the *lex fori*: Story's Conflict of Laws, § 557. The remedy is the means employed to enforce the plaintiff's right of action. All the machinery of the courts called into action to enforce the contract and everything that is matter of evidence goes to the remedy. It has clearly been held in this and other states that the question of the bar of the Statute of Limitations is a question affecting the remedy: Hoag v. Dessau, 1 Pitts. R., 391; Byrne v. Crowninshield, 17 Mass., 55; Story on Conflict of Laws, § 576. The same presumption, in effect, would arise by not bringing suit within six years, as by not enforcing the remedy within a reasonable time after notice given: Toomer v. Dickerson, 37 Geo., 428. It is well settled that where a creditor has money or property of the debtor in his hands, either actually or potentially, he must apply it to the satisfaction of the debt: Richards v. Com'th., 4 Wr., 149; Everly v. Rice, 8 Harris, 299; Clow v. Derby Coal Co., 2 Out., 432; Fegley v. McDonald, 8 Nor., 130.

The Act of Congress for the authentication of Records (1 R. S., § 905) requires that "the Acts of the legislatures of any state or territory or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seal of such state, territory or country affixed thereto." The volume offered in evidence had printed on the back "Code of West Virginia, 1868;" the most that can be claimed for it is, that it is a mere digest. Surely the courts would not recognize a digest copy of the law as proper evidence to go to the jury. The digests of English and American law are for the most part deemed not authorities, but simply manuals of reference by which the reader may find his way to the original laws which are authorities: 1 Burr, 364.

*J. A. J. Buchanan* (*Wyly* and *Walton* with him), for defendant in error.—The mere fact of our having degenerated into the careless practice of verbal notice, does not, certainly cannot, change the principle covered by such notice. The effect is there the same whether the proceedings be in the one way or the other, and discharges or releases the surety forever from the debt, not like the Statute of Limitation, which may be pleaded in the *lex fori*, because it specifically bars the remedy by its own terms, and does not *extinguish the debt*, for after the limitation has run and the debt revived by new promise, suit is to be brought on the original contract. But the Statute of Limitation of Pennsylvania for payment of money expresses its scope, and that is a mere suspension of the remedy.

As there is no place named in the paper for payment, and the creditor lives in West Virginia, where the contract was

made and the bill or note delivered, that must be the place of payment, and consequently the plea of release should be tried by the laws of West Virginia.    Wherever the contract between the particular parties is made, the law of the place will operate as well in respect to the *discharge* as to the obligation thereof: Story's Conflict of Laws, § 343 *et seq.;* Greenwald *v.* Kaster, 5 Norris, 45.

Norval Brown, the defendant, was incompetent to testify because his co-obligor was dead; this objection we think is fully sustained by Noble *v.* Mortimer, 4 W. N. C., 300; Hanna *v.* Wray, 27 P. F. S., 27; Standbridge *v.* Catanach, 2 Norris, 368.    And the substance of testimony offered was equally inadmissible.    It was not an offer to show that Abraham Tenant, the administrator, was willing and had made a contract to pay his own debt with the assets of the estate, but that he could be compelled to do so, and this without stating in the offer that the debt from the administrator was *due* even: Trotter *v.* Shippen, 2 Barr, 358.

The code offered in evidence was "published pursuant to law" and was competent evidence of the law of West Virginia: Mullen *v.* Morris, 2 Barr, 87.

Mr. Justice GREEN delivered the opinion of the court November 2d, 1885.

The contract in suit in this case was in form a promissory note under seal for the payment of $130.52, dated Oct. 26th, 1869, payable at nine months from date.    No place of payment is designated in the instrument, but it was given to A. W. Tenant, administrator, etc., of William Tenant, deceased, who was a resident of West Virginia at the time of his death, and the administrator was and is, also, a resident of the same state. The note was given in payment of certain articles purchased at administrator's sale held in West Virginia soon after the intestate's death, and was delivered to the payee in that state. Two sureties joined in the note, one of whom lived in West Virginia and the other in Pennsylvania, and it is against these the present suit is brought.    Of course, the note being payable at the residence of the payee and having been delivered there, for goods sold there, must be deemed and taken to be a West Virginia contract.    This contract was made, and was to be performed, in that state and hence the law of that state must govern in determining its validity, obligation and construction. The only question in the case is, whether the defence set up by the sureties must be determined by the law of West Virginia or the law of Pennsylvania.    The defence is that the sureties gave notice to the creditor that he must proceed against the principal for the collection of the note or they would no longer

be responsible. By the law of West Virginia such a notice, to be effective, must be in writing. In this case it was verbal only and therefore if judged by the law of West Virginia it was nugatory. It is argued for the defendants that this right of relief to a surety is a matter relating to the remedy and must therefore be determined by the *lex fori*. But we do not think this position tenable. The right of a surety to discharge his obligation by notice to the creditor to pursue the debtor, is an incident of the contract of suretyship. It is a part of the law of that contract and is therefore a part of the contract itself. It is a qualification of the obligation of the contract, reducing it from a peremptory and absolute obligation to one of a qualified or conditional character. It is true the surety may not exercise his right and if he does not his obligation remains intact. But on the other hand he may exercise it and if he does, and the creditor pays no heed to the notice and thereby fails to recover from the principal debtor, the very root of the surety's obligation is reached and destroyed; he is no longer liable; it is as though he had never contracted. Very different is this from the defence of the Statute of Limitations. There the obligation of the contract is not terminated or defeated. Only a right to enforce it by an action in the courts is imperilled. The state simply declares that if her process is used it must be done within certain fixed periods of time, and if not so used the defendant may at his option plead the laches of the plaintiff and receive the benefit of the prohibition. It is in substance a prohibition upon the use of process after a defined period, and this, of course, makes it matter of remedy only. For these reasons we think it quite clear that the right of a surety to discharge his obligation by a disregarded notice to the creditor to pursue the principal debtor, is a matter affecting the obligation of the contract and must therefore be determined by the law of the place of the contract. The notice given in this case was verbal only and therefore of no effect by the law of West Virginia and hence unavailing here.

Another defence offered to be proved but rejected was, that the plaintiff had in his hands the means of satisfying the debt due by the principal debtor, because he had bought from the debtor an interest in some land for $400 and paid him the money for it instead of applying enough of it to pay off this debt. The offer of proof does not disclose whether the debtor was willing to convey his land to the plaintiff, and take the note in suit in part payment, and if he was not willing it is difficult to see how he could have been compelled to do so. Nor does the offer disclose whether the debtor did convey, or was willing to convey, the land upon credit, and without that element it does not appear that the plaintiff ever did have the

means of extinguishing the debt in suit by applying his own debt in discharge of it. For aught contained in the offer it does not appear that the debtor was willing to accept or did accept anything but actual cash down as the consideration of his conveyance, and therefore there was no error in rejecting the offer. But even if the plaintiff did for a time owe the purchase money to the principal debtor, it was due by him individually, while the debt due to him was due in his representative capacity and he certainly could not lawfully use the assets of the estate to pay his private debt. He could not in any event be compelled to do so against his will, and that is what is asked by the rejected offers of proof: Miller v. Ege, 8 Barr, 356.

As to the proof of the law of West Virginia by means of a printed volume purporting to be printed by authority and to contain the laws of that state, the very question was ruled in Mullen v. Morris, 2 Barr, 85, in favor of its admissibility.

Judgment affirmed.