## Anderson v. National Surety Company.

*Contract—Written and parol contract—Evidence.*

Where in an action of assumpsit the defendant claims that the real contract was covered by a letter beginning with the words "as per our conversation of yesterday," and the evidence for the plaintiffs although contradicted, tended to show that the conversation referred to was different in its terms from those of the letter, the question as to what was the real contract between the parties is for the jury.

*Corporation—Powers of agent.*

A general agent of a surety company in a particular locality who holds himself out as such with the knowledge of the company, solicits and negotiates surety bonds for it, receives the premiums and transmits them to the company and delivers the bonds, has authority to execute a contractor's bond, notwithstanding a secret restriction on his authority that his action in such a matter must be approved by the company; and the company is bound by his act where it has ratified his action by accepting premiums and paying part of the obligation created by the bond.

Argued March 23, 1900.    Appeal, No. 4, Jan. T., 1900, from judgment of C. P. No. 1, Phila. Co., June T., 1899, No. 374, on verdict for plaintiffs, in case of William M. Anderson and William P. Adams, copartners, trading as Anderson & Adams, v. National Surety Company.    Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ.    Affirmed.

Assumpsit on a contract.    Before BRÉGY, J.

The facts appear by the opinion of the Supreme Court.

Defendants' points among others were as follows:

1. A party who avails himself of the act of an agent must, in order to charge the principal, prove the authority under which the agent acts. The burden of proof lies on him to establish the agency and the extent of it. Acts done by the alleged agent are not proof of his authority to act for the principal: Hays & Wick v. Lynn, 7 Watts, 525; Moore's Executors v. Patterson, 28 Pa. 505. *Answer:* Refused. [9]

2. There is not evidence in this case such as is sufficient to show G. H. Taylor to have been an agent of the defendant company legally authorized to enter into a contract with the plaintiffs such as is here sued on, and nothing said or done by

him is to be considered by the jury as binding the defendant in this action. *Answer:* Refused. [10 ]

3. There is no evidence of any authority in G. H. Taylor, the general agent of the defendant corporation, to make the contract set up by the plaintiffs in this action: 12th St. Market Co. v. Jackson, 102 Pa. 271. *Answer:* Refused.

Verdict and judgment for plaintiffs for $3,322.31. Defendant appealed.

*Errors assigned* among others were (5, 6) in submitting the question to the jury as to what was the contract; (9–11) above instructions, quoting them.

*S. Davis Page,* of *Page, Allinson & Penrose,* for appellants.—Taylor denies absolutely that he ever had a conversation with Anderson or Adams of the purport stated, and such parol testimony, if admitted, would certainly contradict, vary, alter and modify the written contract presented by Taylor in the letter of September 10, 1898, such contract being altogether unambiguous in its terms, and there being no claim of fraud, misrepresentation, accident or mistake, which alone would justify the admission of such testimony: Collins v. Baumgardner, 52 Pa. 461; Rearich v. Swinehart, 11 Pa. 233; Dickson v. Hartman Mfg. Co., 179 Pa. 343; Corcoran v. Mut. Life Ins. Co. of N. Y., 179 Pa. 132; Halberstadt v. Bannan, 149 Pa. 51.

Taylor's authority was denied by the appellants; the court below took the consideration of all the facts bearing on the question from the jury, assuming there was no proper controversy about it. The rule is that whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limitations of his power: Edwards v. Dooley, 120 N. Y. 540; Odiorne v. Maxcy, 13 Mass. *179; Mechanics' Bank v. Schaumburg, 38 Mo. 228; Stewart v. Woodward, 50 Vt. *78; Mundis v. Emig, 171 Pa. 417; Noble & Hall v. Lycoming Fire Ins. Co., 91 Pa. 387; Union Refining & Storage Co. v. Bushnell, 88 Pa. 89; Williams v. Getty, 31 Pa. 461.

The responsibility of the appellants was a conclusion of fact to be deduced from circumstances by a jury rather than assumed by the court: Jordan. v. Stewart, 23 Pa. 248; Nicholson v. Gol-

den, 27 Mo. App. 132; Fisher v. Harrisburg Gas Co., 1 Pearson, 122; Langenheim v. Anshutz Bradberry Co., 38 W. N. C. 505; 12th St. Market Company v. Jackson, 102 Pa. 269.

*Edward P. Bliss*, for appellees.—A principal is responsible for the acts of his agent, within the apparent scope of his authority, although there may be as between the principal and agent, a restriction upon that authority: Williams v. Getty, 31 Pa. 461; Hill v. Nat. Trust Co., 108 Pa. 1; Balt. & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Harrington v. Bronson, 161 Pa. 296.

Under the evidence in this case, the court below could not do otherwise than to admit parol testimony as to the terms of the contract and then leave it to the jury to decide what those terms were: Holt v. Pie, 120 Pa. 425.

OPINION BY MR. JUSTICE DEAN, May 23, 1900:

One William J. Donegan, on August 19, 1897, made a contract with William G. Patton, for the plumbing and gas fixtures of eighty houses in Philadelphia. The price to be paid was $14,400, twenty per cent of which was to be reserved and paid after the houses were finished and ready for sale or occupancy. The plans had been prepared by an architect, and were in possession of Patton when the contract was executed; they were made part of the contract, but still, it was stipulated, that Donegan was to do all that kind of work about which they were contracting, even if not specified in writing. This defendant, the National Surety Company, of New York, became surety for Donegan to the Equitable Trust Company of Philadelphia in the sum of $5,000 for the performance of the work according to the contract. After Donegan had done part of it, and there had been paid him $7,770, he abandoned the contract; the Equitable Trust Company called upon the surety company to complete it. At that date the Equitable had in its possession $3,750 cash and the twenty per cent reserved. The resident general agent of the National Surety Company in Philadelphia was G. H. Taylor, who, on learning of the default of Donegan, had a conversation with plaintiffs, who were gas fitters and plumbers, and the next day wrote them this letter:

"9–10–98.

" MESSRS. ANDERSON & ADAMS,
                " No. 128 So. 20th St.

" Gentlemen : As per our conversation of yesterday, this is to authorize you to complete the contract of William J. Donegan, on the Patton operation, as per the terms of Mr. Donegan's contract. Mr. Patton will see you and make arrangements for any extras which may be done, and which are not provided for in the contract. You may order the goods which are necessary to complete, and look to the National Surety Company for moneys which will be due you for same as the work progresses. If there is anything further which we can do for you in this matter, kindly call us up over 'phone or drop us a line, and we will be glad to take the matter up with you.

                              " Yours truly,
                                " G. H. TAYLOR."


The plaintiffs immediately commenced, and in due time finished the work; payments were made to them from time to time by the Equitable Trust Company, on certificates, vouched by Patton and countersigned by the inspector of the company, the money being furnished through checks of the surety company, which last named company, in this way, paid to plaintiffs $3,556, leaving, as plaintiffs claimed, a balance of over $3,000 on their contract unpaid. The surety, alleging, then that it had paid all that its contract of suretyship for Donegan called for, and that it was only answerable to plaintiffs to the extent of Donegan's default, refused to make further payments; thereupon, plaintiffs under their contract with the agent Taylor bought this suit against the surety 'company. At the trial the main contention, from the evidence, was, what was the contract? The first line of the letter says, " as per our conversation of yesterday." The plaintiffs allege that the actual contract was to be found in the conversation in connection with this letter; the defendant alleged that the whole contract was evidenced by the words following the expression quoted, in the letter ; and that meant plaintiffs were to finish Donegan's contract in its exact terms, for the balance of consideration which by that contract was to be paid Donegan. The learned judge of the court below, being of opinion, that the letter did not

necessarily express the whole contract, if plaintiffs' evidence were believed, submitted to the jury the evidence to find: 1. Was the conversation of the day before a material part of the contract? 2. If so, what was said, and what did the parties mean by what they said? The jury found for plaintiffs, and we have this appeal by defendant, who assigns thirteen errors.

Most of these errors are disposed of by our ruling on the main contention between the parties. Was the contract between the parties wholly a written one? If so, error runs through the whole of the charge, and is also present in many of the rulings and offers of evidence. Or, was it part oral and part in writing? If so, the charge is substantially correct. In general, if a written contract be exhibited, it is persumed to express the intention of the parties to it, and the whole of their intention; the oral negotiations which preceded it are presumed to be merged in the written contract, and evidence of the conversations which lead up to it are not admissible to contradict, vary, enlarge or restrict its terms; it is the duty of the court to ascertain from the written language the intent of the parties. But we are free to say this rule is not necessarily applicable here; the very first duty of the court, on an inspection of the writing, was to say it might not, from its very terms, embody the whole contract. It starts off by saying: "As per our conversation of yesterday," you are to complete Donegan's contract as per the terms of that contract. Regarding the "conversation of yesterday," it is testified by Anderson, one of plaintiffs, who had the conversation with Taylor, defendant's agent, that on verbal request of Taylor, he and his partner, Adams, examined each of the eighty houses embraced in Donegan's contract; three or four of them were finished; then, assuming the fact that the finished ones had been accepted, as a compliance with the first contract, they made a schedule of what work and materials would be necessary to complete all the unfinished houses, and estimated the charge they would make for completing the contract at $6,588. The written schedule and estimate he delivered to Taylor; the terms of payment were to be cash as the work progressed. This last stipulation was not expressed in the paper further than the fixing the round price; the price demanded seemed to be satisfactory to Taylor, and Anderson left, Taylor saying he

would let him hear from him; the next day Anderson received the letter we have quoted. He is positive he never saw Donegan's contract nor the plans and specifications; that Taylor requested him to examine the houses, to see what was necessary to finish them, and then estimate for what price they would finish the work, and this they did. Taylor's testimony is in direct conflict with Anderson; he testifies that he showed the Donegan contract to Anderson and asked him to examine the houses and inform him whether they would agree to complete them for the balance yet payable on Donegan's contract; that, after making the examination, Anderson called and said, they would finish them as specified in the Donegan contract, according to its terms, for the balance due; that he never saw the estimate of plaintiffs, which Anderson testifies was delivered the day before, and that the letter quoted, that he sent next day to plaintiffs, refers solely to the terms, including the balance due, of Donegan's contract. In corroboration of plaintiffs, the written schedule and estimate, dated September 9, was in defendant's possession and produced by it at trial on notice; it does not mention Donegan's name, and is on its face an independent estimate made after examination of the houses; if Anderson's evidence be believed, it is plainly a part of the contract. On the other hand, the latter part of the letter of September 10, from Taylor to plaintiffs, on a not improbable interpretation of it, corroborates Taylor, and was the entire contract. But, as the evidence stood at the close of it, it was a question of fact for the jury. Did the letter of the 10th embody the entire contract? If it did not, then what was the oral contract of the day before? If the letter did constitute the whole contract, then plaintiffs had no case, for all that remained to be done was to compute the balance unpaid on the Donegan contract. We are of opinion that the court took the right view of the law in submitting the evidence to the jury, and gave full and adequate instructions thereon.

As to the errors assigned, involving the court's decision, that, on the established facts, Taylor had authority, as agent to write the letter, we only say the decision ought not to have been otherwise. Taylor admits he was the general agent of the company in Philadelphia, and held himself out as such with the knowledge of the company; solicited and negotiated

surety bonds for it; received the premiums and transmitted them to the company, and delivered the bonds as he did this one. He says, as to this sort of bond, a contractor's bond, he had no authority, unless his act was approved by the company. Such secret restriction will not avail the company, after his appointment as general agent to deal with the public; besides the company accepted the premiums, and paid part of plaintiffs' contract price during the progress of their work. This was a distinct ratification of the act of the agent in making the contract, whatever may have been its terms.

We can find nothing of merit in any of the assignments of error; all are overruled, and the judgment is affirmed.