## Buckwalter Stove Company v. Central Trust & Savings Company, Appellant.

*Contract—Trust company—Disbursing funds for building operation—Agreement with material man.*

1. Where a trust company which holds and disburses funds for the completion of a building operation, and insures the completion of the operation, agrees to pay moneys to a material man for material already furnished, if the latter will furnish other material necessary for the

operation, and the material man obtains an order from the contractor on the trust company for an amount sufficient to pay for all of the material, and the company has notice of this assignment, and agrees that the amount named shall be appropriated as designated in the assignment, the trust company will be liable to the material man for all of the material furnished, and cannot set up as a defense that it only received from the builder eighty per cent of the total cost of the building, or that the assignment for the benefit of the material man had not been accepted in writing, or that the company's trust officer had no authority to enter into the contract.

2. A parole promise to pay the debt of another out of funds transferred to the promissor is not within the statute of frauds. The duty is one of agency rather than one of suretyship.

*Corporations—Trust company—Power of officers.*

3. When a corporation intrusts a manager with the general supervision of a particular branch of its business it invests him with the power of a general agent coextensive with the business intrusted to his care.

*Evidence—Witness—Memory of witness.*

4. A witness who testifies to a conversation which he had heard many years before may tell as near as he can what was said. He cannot be expected to give the identical words of the conversation.

Argued Dec. 11, 1912. Appeal, No. 75, Oct. T., 1912, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1907, No. 1549, on verdict for plaintiff in case of Buckwalter Stove Company v. Central Trust & Savings Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit for moneys had and received. Before DAVIS, J.

The facts are set forth in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,088.42. Defendant appealed.

*Errors assigned* were various rulings and instructions.

*E. W. Wilson*, with him *J. Hector McNeal*, for appellant.—The trust officer had no power to make the contract: Milward-Cliff Cracker Co's Estate, 161 Pa. 157; Bangor & Portland Ry. Co. v. American Bångor Slate Co.,

203 Pa. 6; Anderson Coal Mining Co. v. Sloan Howell & Co., 46 Pa. Superior Ct. 320; German-American Title & Trust Co. v. Citizens' Trust & Surety Co., 190 Pa. 247; Gause v. Commonwealth Trust Co., 196 N. Y. 134 (89 N. E. Repr. 476).

The verbal acceptance by the trust officer of a subcontractor's order to set aside funds for a material man is not enforceable: Act of May 10, 1881, sec. 1, P. L. 17; Maginn v. Dollar Savings Bank, 131 Pa. 362.

The existence of an alleged parol contract cannot be made out by evidence which states no more than the witness' own conclusion from what was said and done as where the witness testified that a certain proposition was "accepted" or that the parties "agreed" to a certain thing: Dimeling v. Buffalo R. & P. Ry. Co., 215 Pa. 480.

*A. W. Horton*, for appellee.—The verbal promise of the defendant was an original undertaking and does not fall within the statute of frauds: Corcoran v. Huey, 231 Pa. 441; Stoudt v. Hine, 45 Pa. 30; Howes v. McCrea, 21 Pa. Superior Ct. 592; McAvoy v. Com. Title Ins. & Trust Co., 27 Pa. Superior Ct. 271; Justice v. Tallman, 86 Pa. 147; Townsend v. Long, 77 Pa. 143; Hall v. Lincoln Savings & Trust Co., 220 Pa. 485; Klein v. Rand, 35 Pa. Superior Ct. 263.

The defendant was bound by the promise of its title and trust officer as he was clothed with the authority of a general agent in charge of the department that handled building operations: American Car & Foundry Co. v. Water Co., 218 Pa. 542.

OPINION BY HENDERSON, J., April 29, 1913:

This action was brought to recover a balance claimed for heaters and ranges furnished, for a building enterprise undertaken by James Conner. The plaintiff's evidence exhibits the following state of facts: There were 156 dwelling houses included in the plan; mortgages were placed on the property and the money arising therefrom amounting to about $282,000 was deposited with the

defendant to be applied by the latter on the bills of sub-contractors for materials, etc.; title to the property was placed in David Carson, who was paying teller of the defendant, by whom the property was to be held until the houses were completed, for the protection of the mortgagees or the Central Trust Company; the defendant insured the mortgagees against loss by reason of the failure of Conner to complete the buildings and received the usual compensation for holding and disbursing the funds deposited; it provided an inspector of the work and the funds were controlled and disbursed by John R. Deacon, trust and title officer of the defendant; the McKee Roofing Company was a subcontractor having a contract for the roofing, cornices, spouts, heater and range work for all the houses at the aggregate price of $21,000, $14,700 of which was to be paid as the work progressed and the remainder, $6,300, at the completion of the buildings; of the fund on deposit, $14,700 was set aside to apply on the McKee contract. The specifications of that contract called for furnaces and ranges to be manufactured by the plaintiff. An agent of the latter took an order from the McKee Co. on June 3, 1906, for ninety-six furnaces and ninety-six ranges. After one-half of the order had been filled the plaintiff became dissatisfied and at a meeting of McKee, P. D. Buckwalter, treasurer of plaintiff, and Deacon at the place where the houses were in course of construction Mr. Deacon expressed himself as not being satisfied with the progress that McKee was making on the operation; that it was not going along fast enough; and that he would have to have more goods and have them shipped faster; in reply to which Mr. Buckwalter said that no more goods would be shipped to that operation until he (Deacon) had acknowledged to the Buckwalter Stove Company that he had set apart $6,000 in payment of the goods that were shipped and were to be shipped to the Conner operation, to which Mr. Deacon replied: "Let the goods come in. We will be responsible for them and pay for them,—The Central Trust Co." A short time thereafter Buckwalter

obtained an order from the McKee Company on the defendant for $6,000 out of the amount appropriated to the McKee contract which amount he requested be set aside for the use of the plaintiff. On the same day Buckwalter and McKee of the McKee Company had an interview with Deacon at which time the order for the $6,000 was handed to Deacon who received it and said that the amount named would be appropriated as requested by the order. At that time, according to the plaintiff's evidence, Deacon also promised to pay for the merchandise that the plaintiff had delivered for the houses and for that to be thereafter delivered. The treasurer of the plaintiff then said to him that if he would confirm that promise in a letter the plaintiff would ship the furnaces and ranges not then delivered. A week later the defendant paid $600 to the plaintiff to apply on the furnaces and ranges theretofore delivered and on July 6, a letter was written to the plaintiff company as follows:

"CENTRAL TRUST & SAVINGS COMPANY.
"Philadelphia, July 6, 1907.
"Buckwalter Stove Company,
"Royersford, Pa.
"Gentlemen:
"The heaters and ranges for the forty-eight houses on Lindenwood Street in the James H. Conner operation, 52nd and Woodland Ave., ought to be shipped at once.
"The McKee Roofing Company have the contract with Mr. Conner for this work. If these heaters and ranges have not already been ordered by Mr. McKee, we would ask that you have them shipped irrespective of Mr. McKee's order.
"I might mention that the money for this material has been set aside to you from Mr. McKee's contract.
"Your early attention to this matter will oblige
"Very truly yours,
"JOHN R. DEACON,
"Trust Officer."

Thereupon, the remaining 48 furnaces and ranges were shipped to the Conner buildings. The total amount of the plaintiff's bill was $4,268.88. The payments made by the defendant amounted to $3,415.10, leaving a balance of $853.78 for which the suit was brought. Liability for this amount is denied by the defendant on the grounds: (1) that the amount deposited with it by Conner was only 80% of the total cost of the buildings and that it was only liable to McKee for that proportion of his bill; that the Buckwalter Company was in the attitude of an assignee of the McKee contract with respect to the furnaces and heaters and that the latter company was not entitled, therefore, to a greater sum than McKee could have recovered; (2) that the assignment of the fund of $6,000 for the benefit of the plaintiff was not accepted in writing and was therefore void; (3) that the defendant's trust officer was without authority to enter into the contract for the payment of the plaintiff's bill as set forth in the declaration and that the contract, if made, was not binding on the defendant.

The defendant denied that an agreement was made between its trust officer and the plaintiff for the payment of the whole bill and on this point an issue of fact was clearly and directly raised and that issue was for the jury unless the court was required as a matter of law to declare that Mr. Deacon had no authority in his capacity as trust officer to enter into such an arrangement. It was not attempted to be shown that the plaintiff had any knowledge that the fund in the hands of the defendant was only eighty per cent of the total cost of the building operation or that McKee was without authority to transfer more than eighty per cent of the amount of the plaintiff's contract to it from his fund in the defendant's hands. Indeed, Mr. Deacon testified that he told Mr. Buckwalter at the time when the order for the $6,000 was deposited with the company that it would be set aside for the balance of the heaters and ranges of that operation and that he presumed at that time that it was to be payment

in full. If the defendant through its trust officer who was admittedly in charge of its business in connection with this building proposition promised the plaintiff to pay that part of its bill already filled and the price of the remaining half of the order to be filled on condition that the plaintiff would proceed to deliver the remaining forty-eight furnaces and ranges and the latter relying on this promise and the representation of the defendant that it held $6,000 to be applied in payment of the plaintiff's bill completed the order by the delivery of the forty-eight furnaces and ranges the defendant became liable to the plaintiff as for a contract of its own. The last lot of merchandise was delivered on the agreement that the whole would be paid for, and this created an original undertaking: Greenough v. Eichholtz, 1 Monaghan, 433; Corcoran v. Huey, 231 Pa. 441. The jury would reasonably conclude from the plaintiff's evidence that the second half of the bill would not have been delivered by the plaintiff except for the promise directly to it by the trust officer and by that delivery a new consideration arose between the plaintiff and defendant. On the state of facts presented by the plaintiff the right of recovery did not depend solely, therefore, on the setting aside of the $6,000 and the consequent liability of the defendant to make payment as a trustee of that amount for the use of the plaintiff.

There is the other feature of the case arising from the deposit of funds with the defendant by McKee to cover the plaintiff's bill. According to the evidence of McKee and Buckwalter this sum was set apart to meet the whole of the plaintiff's claim for material to be furnished. The defendant had notice of that assignment and at the request of the plaintiff's treasurer stated in writing that money for the heaters and ranges had been set aside from Mr. McKee's contract. Liability under such a state of facts does not arise against the defendant as a surety or guarantor of the debt of another. It had in its possession money of McKee; McKee contracted with the plaintiff;

what the plaintiff was to receive from the defendant, therefore, was McKee's money, and the defendant's promise was to deliver this money to the person to whom McKee had directed it to be paid. A parole promise to pay the debt of another out of the funds transferred to the promissor is not within the statute of frauds. The duty is one of agency rather than one of suretyship: Stoudt v. Hine, 45 Pa. 30; Justice v. Tallman, 86 Pa. 147; McAvoy v. Com., etc., Trust Co., 27 Pa. Superior Ct. 271. The defendant had an interest in the completion of the McKee contract. It had assumed the responsibility of disbursing the funds intrusted to it and was paid therefor. It also was an insurer against loss to mortgagees by reason of failure to complete the buildings. It assumed through its trust officer to interfere in the McKee contract and appeal to the plaintiff to ship the material "irrespective of Mr. McKee's order." It was in some degree then in relief of its own obligation to have the work pushed to completion, a part of which completeness was the installing of the plaintiff's castings. There was evidence, too, of ratification in the payments made by the defendant to apply on the plaintiff's bill. When the trust officer learned that the fund in his hands was only sufficient to pay eighty per cent of the cost of construction does not appear, but it was not shown that the plaintiff knew anything of such arrangement and it might fairly be concluded that the trust officer did not until about the time of the plaintiff's demand for final payment.

It is urged by the appellant that the Act of May 10, 1881, P. L. 17, which provides that no person within this state shall be charged as an acceptor on a bill of exchange, draft or order drawn for the payment of money exceeding $20.00, unless his acceptance shall be in writing, signed by himself, or his lawful agent, protects the defendant from liability the assumption being that the action is on the order given to the plaintiff. But this is a misapprehension of the cause of action. The plaintiff's position is that the defendant promised to pay upon a sufficient considera-

tion and that it had in its hands funds of the plaintiff's debtor, McKee, more than sufficient to meet the demand. The authority of the agent to make the promise set up we think cannot be successfully questioned. The general rule is that when a corporation intrusts a manager with the general supervision of a particular branch of its business it invests him with the power of a general agent coextensive with the business intrusted to his care: Anderson v. National Surety Co., 196 Pa. 288; Am. Car & Foundry Co. v. Water Co., 218 Pa. 542. The defendant committed the management of its building operations business to its trust and title officer and he was in apparent charge of the financial side of the Conner enterprise. Whatever his actual authority may have been the jury must determine what it was from the evidence as no writing was introduced at the trial and his authority for the purposes of this case exists in parol: Singer Mfg. Co. v. Christian, 211 Pa. 534. The question whether Mr. Buckwalter for the plaintiff agreed to accept eighty per cent of the bill or was informed of any agreement or arrangement between McKee and the trust company or between Conner and the trust company that the $6,000 set apart was to pay but eighty per cent of the costs of heaters and ranges for the entire operation was submitted to the jury with instruction that if Mr. Buckwalter had made such an agreement or had such knowledge then the plaintiff had been paid all that it was entitled to receive, but that if there was no such agreement or understanding then the plaintiff would not be bound by an arrangement between Conner and the trust company to which it was not a party and to which it had not given its consent. This we regard as fully authorized by the evidence and as presenting the case in a form as favorable to the defendant as the evidence permitted. The court could not have given binding instructions for the defendant nor have entered a judgment n. o. v. without ignoring relevant and important evidence in the case on which the right of the plaintiff to recover was based.

The refusal of the court to strike out portions of the evidence of the witness, Conner, as set forth in the twelfth and thirteenth assignments of error we do not regard as erroneous. It is true the witness did not state the exact language used by Buckwalter and Deacon in their conversation, but that could hardly be expected after the lapse of a considerable time. A witness who under such circumstances would undertake to give the identical words of a conversation of some length would subject his integrity to suspicion, but the witness did undertake to tell as nearly as he could what was said and in the material part of his testimony stated what Mr. Deacon said to Mr. Buckwalter. We have given close attention to all of the evidence and have examined the numerous assignments with care but are not convinced that the court erred in any material respect.

The judgment is affirmed.