# Fruit Dispatch Company, Appellant, *v.* Magee.

*Contract—Sale—Breach—Evidence—Principal and agent—Corporation.*

In a suit where a corporation is sought to be held liable in damages for breach of a contract to deliver a carload of bananas the claimant testified that he made an oral contract with the company's agent for the sale and delivery of the bananas. The company offered evidence tending to show that the order had not been accepted by the company. The course of dealing between the parties indicated that for many years purchases had been made orally from the agent, and had not been repudiated by the company. The contract provided that the shipment should be made on a particular day. The excuse given for not making the shipment, was impossible weather conditions. *Held,* that the case was for the jury.

Where authority is to be implied from acts of the agent and evidence appears that a course of dealing had been established which has been recognized by the principal, the question of authority and scope thereof is for the jury.

Argued Dec. 7, 1914. Appeal, No. 272, Oct. T., 1913, by plaintiff, from judgment of C. P. Northampton Co., April T., 1912, No. 70, on verdict for plaintiff in case of Fruit Dispatch Company v. Horace L. Magee, et al., trading as Magee Brothers. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before STEWART, P. J.

The court charged in part as follows:

The action that you are now trying is one brought by

the Fruit Dispatch Company against the firm of Magee Bros. The suit is brought, in the first instance, to recover a bill for some cocoanuts and some bananas which were sold by the plaintiff to Magee Bros., and the date of that transaction is December 5th. The amount of the transaction is $199.87. There is no dispute about either date, December 5th, or the amount, $199.87, of that first transaction between these parties. But Magee Bros. had another transaction, and there is where the dispute comes in; and the defendants, the Magee Bros., now claim that by reason of the failure of the plaintiffs to fulfill their contract which took place on the 15th of December, that is, ten days after the one that I have first spoken of, they suffered damages.

Now, it is undisputed in this case, from any point of view, as the court understands it, that there was some conversation, either over the 'phone, or by word of mouth, or in both ways, between Mr. Magee and Mr. Gallagher. There is no dispute about that. Mr. Magee, as the court remembers it, says that he called Mr. Gallagher up, had a conversation with him about the purchase of 500 bunches of bananas, and when he went to Philadelphia, at a place which he indicates and identifies, on the steps of the auction room, at an hour which he remembers, which was, as the court remembers it, at a quarter of one, he would have you believe that he made a definite contract for these 500 bunches of bananas which were to be delivered to Mr. Magee to have them here on Saturday, and he has given you the reason why he wanted them—for his Christmas trade.

Now, he says that that was a verbal contract entered into between him and Mr. Gallagher acting for the plaintiff; and his position is that that is all there was in the matter; that it was begun and ended—it was a finished transaction. Now, are you satisfied, from all the evidence in the case, that that was the way this matter took place between the parties; because, if that was so, then the fruit company never delivered the goods, the ba-

nanas, to Mr. Magee at the time he stipulated, and I say to you, as a matter of law, that their defense that the weather was too cold is not a good defense. Impossibility of performance is not a defense. A man who enters into a bargain where the delivery depends upon weather conditions must be held to know that there are likely to be changes, and if he wants to relieve himself from the performance of his contract it is very easy to say so—very easy to put it in writing that he shall not be compelled to ship the bananas if the weather is too cold and the weather is going to destroy them. Nor do I find anything in these conditions which I have read over of these changes; because as I read these conditions, if the conditions are applicable, if they had shipped these bananas and they had frozen it would have been at the loss of the Magees. So I say to you, gentlemen of the jury, that that is not a defense, and so charge you as a matter of law. And when the court charges you as to what the law is, it is to be expected that you will take what the court says as being the law upon that subject. When it comes to matters of evidence, it is your recollection which is to govern and you are the judges of matters of fact, not my statements as to recollection of facts, but your recollection governs. In matters of law, you are expected to take the law as the court lays it down.

[But, the plaintiff, the fruit company, in answer to this claim, puts in another defense; and they say that Mr. Gallagher is not such an agent as would be entitled to make any contract, and that all contracts, as the court understands it, are subject, in the first place, to this paper which is marked Exhibit No. 1, and the significant words of that paper are, after acknowledging the receipt of a telephone order, "this memorandum is merely an acknowledgment and not an acceptance of your order which is to be accepted only by shipment and upon and subject to the terms printed on the back hereof." If you should find that that contract was entered into, as I said before, between Magee and Gallagher, and nothing was

said about sending any memorandum, such as this is, they couldn't send that memorandum to Magee and make it a part of the contract unless the Magees had bound themselves by something, either in writing or by a course of dealing, which would make a memorandum, such as this, a part of the contract. Therefore, it becomes important for you to consider whether they did so bind themselves.] (2)

It appears that some time in March, 1909, on the 15th, that the Magees had signed this yellow paper, which is marked Exhibit No. 6, in the presence of Mr. Arnold, who lives in the Third Ward of the City of Easton, who happened to be in their room, and in the presence of Mr. Gallagher, and their names appear here as witnesses. That receipt refers to this book, and by the terms of this book the same wording that you find upon the back of the memorandum is made part of any contract which may be entered into at that time or in the future between the plaintiff and the defendant in this case.

Now, it also appears, according to the testimony of Mr. Magee, and according to the exhibit, which is No. 4, I think, that about a year afterwards, on May 10, 1910, the Magees sent back this book, and substantially, as it appears from the contents of the letter, said: "We return your code. We do not see any advantage in using the code at all, as you have never put any price in the telegram." If they sent that back to the fruit company, and the fruit company received it, and there is a presumption of law if it was mailed to them and properly addressed they got it, then the Magees would not be bound by that code and by the conditions which are contained in the book, because it would be the duty of the fruit company if they intended to bind them to call their attention to the fact that they were sending back that which was a part of the original contract. There is no evidence that there was any action of that kind taken by the Fruit Dispatch Company. But they say that irrespective of that the whole course of dealing, every one

of their transactions, whether by 'phone or verbal, every single one of them, was subject to confirmation by memoranda that are similar to this one, and that the Magees knew that the only acceptance of the order would be by shipment; that is to say, until the fruit company actually shipped the goods, sent the goods on the car, that there was no order binding between the parties. If you believe there was such a course of dealing, that the Magees knew or ought to know that every order that they placed with them would be subject to this condition and that there would be no contract until there was a shipment, then it would be your duty to find that the plaintiffs had sustained their claim in answer to the claim for set-off.

Verdict and judgment for plaintiff for $61.64. Plaintiff appealed.

*Errors assigned* were in refusing binding instructions for plaintiff and portion of charge as above quoting it.

*J. W. Fox,* with him *E. J. Fox,* for appellant.

*Pennel C. Evans,* with him *Clarence Beck,* for appellee.

OPINION BY KEPHART, J., July 21, 1915:

This is an appeal from an action by the fruit company as plaintiff against Magee Brothers, defendants, for produce, and a counter claim for damages for failure to ship bananas as agreed upon. The verdict sustained defendant's counter claim which the court below refused to disturb. Hence this appeal.

The defendants presented evidence showing that on December 15, 1910, in Philadelphia, they made and concluded a contract for the shipment of a car of bananas from New York on the 16th. This contract did not depend on any memorandum of acknowledgment and stipulation therein contained, that "it is to be accepted only

by shipment." Without defendants' consent the contract thus made could not be modified by subsequent receipt of such acknowledgement. It appears from the defendants' testimony that when bananas were purchased on the dock they never received any such acknowledgment or memorandum, as the sale was then and there concluded. It is apparent plaintiff must have regarded Gallagher's contract as one requiring shipment to be made on the 16th. Its representative asked defendants, when it found it impossible, through weather conditions, to ship on the 16th, whether it should make shipment thereafter, and not being advised no shipment was made.

Gallagher, the agent who sold the bananas to the defendants on the dock in Philadelphia, to be shipped from New York, was named in the memorandum of purchases as the resident manager. The defendants purchased yearly from him, as plaintiff's representative, from thirty-five to fifty cars of bananas, most of which were on orders for future delivery. In no instance, as far as we can determine from the testimony, were these contracts for future delivery repudiated by the plaintiff. The law is well settled that where authority is to be implied from acts of the agent, and evidence appears that a course of dealing has been established which has been recognized by the principal, the question of authority and scope thereof is for the jury: Singer Mfg. Co. v. Christian, 211 Pa. 534. "When a corporation intrusts a principal officer or manager with the general supervision of a particular branch of its business, it clothes such officer or manager with the authority of a general agent coextensive with the business intrusted to his care, and private instructions limiting his ostensible powers will not protect the corporation from liability for the acts of the agent done within the scope of his ostensible authority, although the specific act may be in excess of private instructions": American Car & Foundry Co. v. Alexandria Water Co., 218 Pa. 542; Buckwalter Stove

Co. v. Central Trust & Savings Co., 53 Pa. Superior Ct. 558.

When the plaintiff failed to ship from New York the car of bananas to be used by the defendants for their Christmas trade, defendants were compelled to buy in Philadelphia bananas necessary to supply this trade; in so doing they paid a sum of money in excess of that which they would have been required to pay had the plaintiff performed its agreement. That plaintiff was prevented by weather conditions from making shipment from New York on the 16th, would not relieve it from liability for the damages defendants sustained. Defendants relied on this contract and plaintiff's failure to perform caused the loss.

The only purpose for which the Code Book would be relevant was to rebut defendants' proof of lack of knowledge of a course of dealing; that from the memorandum and Code Book they knew an acknowledgment must follow the purchase; but in the face of the defendants' testimony that the sale was complete on the dock, and that the Code Book had been returned some seven months before as being of no use to defendants, this Code Book would not be conclusive of the defendants' right to set-off. This testimony was for the jury.

The assignments complaining of the charge of the court are without merit. The charge presented every phase of the plaintiffs' case. The motion to strike out plaintiffs' testimony with reference to the contract of December 15th, because the contract was not proven and that Gallagher had no authority to make such contract, was properly refused.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.