**ANTHONY P. MILLER, Inc., v.
NEEDHAM et al.**

No. 7627.

Circuit Court of Appeals, Third Circuit.

June 17, 1941.

Rehearing Denied Oct. 2, 1941.

Edward H. Cushman, of Philadelphia, Pa., for appellant.

Lewis M. Stevens, of Philadelphia, Pa., for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

█ This is an action by a general contractor against the surety company which furnished the bonds for a subcontractor's performance, to recover damages sustained by the plaintiff by reason of the subcontractor's inefficiency and his failure to complete the work and pay materialmen. The defences raised by the surety in the court below were: (1) Fraud on the part of the subcontractor which was participated in by the plaintiff [1] in procuring the bonds and (2) over-payments by the contractor to the subcontractor. The learned trial judge dismissed the complaint. He refused to make the finding of fraud contended for by the defendant, although he did not find that there was not fraud. The defendant-appellee, in this court, strenuously urges the circumstances tending to prove fraud upon our attention. We shall not review the testimony. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: " * * * Findings of fact shall not be set aside unless clearly erroneous * * *."

We find no such clear error in the fact finding of the court below.

Plaintiff, Miller, had a contract with the United States Government for the construction of buildings in the Westfield Acres Housing Project in New Jersey. The contracts for heating, plumbing and outside steam distribution were let to Needham by subcontracts executed September 3, 1936. Needham's bonds to Miller, with the bonding company as surety for the performance by Needham, were executed September 22, 1936. Needham abandoned the contracts on December 24, 1937.

The contracts between Miller and Needham provided for monthly progress payments of 85% of the value of the work done during the preceding month. It is found, as a fact, that the plaintiff overpaid Needham from the beginning of the job until the latter suspended performance. The overpayment as of December 24, 1937 was found to be $46,681.92, plus a sum sufficient to complete Needham's incompleted contracts. The full amount of this overpayment represented an invasion of what should have been the retained percentage amount.

█ If the case stopped there we should have the often litigated situation of the creditor who overpays the debtor on a building contract and the problem of the effect of such overpayment upon the surety. In two-state transactions presenting questions of conflict of laws, it is now clear that a federal court, in making the appropriate rules of reference to the law of other states, must follow the conflict of laws decisions of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 61 S.Ct. 1020, 85 L.Ed. 1477, 1941; Griffin v. McCoach, 61 S.Ct. 1023, 85 L.Ed. 1481, 1941. In this case for instance, the court below and this court as well, adopts such rules of reference to the law of other states as a Pennsylvania court makes, subject, of course, to the governing effect of the Federal Rules of Civil Procedure in procedural matters.

But before we reach the point of determining what law applies to the effect upon the surety of overpayment by the creditor (Miller), we must consider an argument raised by the plaintiff, which, if sustained, materially changes the whole problem. Defendant bonding company is an Indiana

corporation. Its business in eastern Pennsylvania is secured through Howard Hager & Co., Inc. of Philadelphia.[2] Hager, it appears, had written bonds before for the subcontractor, Needham. Upon the occasion of this application he called upon Miller and said he (Hager) would provide Needham with the necessary bonds for the latter's part of this project if Miller would agree to accept trade acceptances from Needham as had been done before on a prior job. This Miller agreed to do. It was these trade acceptances which accelerated the payments by Miller to Needham.

The plaintiff contends that this arrangement binds the bonding company. The argument, as we understand it, goes something like this: (1) That Hager was the general agent of the defendant company; (2) that a general agent may bind his principal by making contracts on his behalf notwithstanding limitations put upon the agent's authority by the principal; (3) that this arrangement, made on behalf of the defendant by its general agent, Hager, bound the defendant notwithstanding that the payments were not made in accordance with the terms of the written contract.

The trial judge did not make a formal finding that Hager was the general agent for the bonding company for eastern Pennsylvania at the time of the transaction in question, although requested to do so. In his opinion, however, he states that "Hager was the defendant's general agent". Plaintiff here, as in the court below, calls attention to the activity of the Hager firm on behalf of the bonding company over a period of years, to the compensation paid by the company which was claimed to be that paid to a general agent, to his appointment of subagents and to his designation as general agent in an insurance directory and on letterheads.

Two questions of Pennsylvania law are presented relevant to this problem. The first is, what law is referred to in determining the scope of Hager's authority. This is a conflict of laws question, obviously, and the authority in Pennsylvania follows the general rule to the effect that the reference is to the law of the place where the agent acts on the principal's behalf.[3] Hager was a Pennsylvania agent by the terms of his appointment, his office was in Philadelphia and an examination of the entire record fails to disclose any evidence that the bonds in question were executed and delivered at any other place than that which is the most natural place under the circumstances, Philadelphia. The law of Pennsylvania therefore governs the scope of Hager's authority. Likewise the law of Pennsylvania must govern the effect to be given to an alleged consent by Hager, subsequent to the execution of the bonds and the beginning of the work by Needham, to the use of the trade acceptances to finance Needham. This consent, if given, was likewise given at Hager's office in Philadelphia.

This leads, then, to the second question of Pennsylvania law: the authority of a general agent.

The distinction between a general agent and a special agent, in Pennsylvania and elsewhere, seems to turn on continuity of service rather than the breadth of the agent's powers.[4] The conclusion, then, that Hager may be regarded as a general agent for the bonding company does not take one far in the real question in the case. As such agent did he have power to agree to an alteration of the provisions of the contracts upon which the bonding company was surety? The general rule, which is followed in Pennsylvania, with regard to what the general agent may do to bind his principal is stated in § 161 of the Re-

---

[2] Again, it is unnecessary to distinguish in this litigation between Howard Hager & Co., Inc., the corporation, and the President of the corporation, Howard Hager.

[3] Restatement, Conflict of Laws, § 345 and Pennsylvania Annotations thereto.

[4] Restatement of Agency, § 3. Comment c to this Section states: "A general agent may have little discretion in regard to the transactions which he is employed to perform, while a special agent may have great discretion in the single transaction which he conducts. Thus, one is a general agent if he is in continuous employment, although the employment consists of purchasing articles as the employer directs with no discretion as to the kinds, amounts, or prices to be paid; while one employed to purchase a single article would be a special agent although given the widest discretion, as where one is directed to purchase any suitable article as a wedding gift." See quotations from numerous Pennsylvania decisions cited in Pennsylvania Annotations to the Restatement of Agency, § 3. Cf. Maryland Casualty Co. v. Peoples, 26 Pa.Super, 142, 1904.

statement of Agency: "A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which he is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that the agent is not so authorized." [5] That Hager was expressly limited by instructions from the bonding company from making changes in the contracts is clear. [6] There is no evidence that this was known to Miller. But there is nothing to show that the power to agree to a material alteration of a building contract is one of the powers which usually accompany or are incidental to transactions engaged in by the general agents of surety companies. On the contrary, testimony of insurance experts offered by the plaintiff was to the effect that the powers of general agents in the surety business vary in each particular case according to their agency agreement with the employing company. In the absence of a controlling decision [7] specifically holding that such power is incidental to a general agency for a bonding company, certainly we should not conclude it in this case. Indeed the weight of argument would seem to lead strongly to the opposite conclusion. The retention of a substantial portion of each payment, as the contracts here provided for, is the very thing which a surety might well depend upon to measure his risk in insuring the subcontractor's performance.

■ Nor was there any representation of authority, not actually existing, on which it could be said that Miller could have relied. Indeed, each of the bonds was accompanied by a power of attorney authorizing execution in the particular transaction. This fact would certainly negative a conclusion of the existence of any unrestrained freedom on the part of the agent to write them as he pleased. We conclude, then, that, under the law of Pennsylvania, there was neither actual, incidental nor apparent authority to consent to this material alteration of the method of payment.

■ This brings us back, therefore, to the question of the situation of a surety where a creditor varies the terms of a contract with the principal debtor by changing the stipulated method of time of payment. By what law is that question to be determined? The obligation of Needham to perform was clearly to take place in New Jersey since that was the place of the building operations in which he was engaged. The surety guaranteed Needham's performance. We may conclude that the surety's obligation is performable in New Jersey. Does it follow that the effect of what the creditor has done shall be determined by New Jersey law? The defendant says yes and cites § 374 of the Restatement of Conflict of Laws which is squarely to this effect. [8] Bearing in mind, however, that a federal court in Pennsylvania must decide this matter as a Pennsylvania court would decide it, the answer is not so clear. The closest Pennsylvania decision to the point seems to be Tenant v. Tenant, 110 Pa. 478, 1 A. 532, 534, 1885. This case involved the effect of an oral notice by a surety on a West Virginia note that the creditor must proceed against the principal debtor for its collection, or he (the surety) would not be responsible. By the law of West Virginia, to be effective, such notice had to be in writing. The court held that the surety was nevertheless liable. It was said through Mr. Justice Green that "The right of a surety to discharge his obligation by notice to the creditor to pursue the debtor is an incident of the contract of suretyship. It is a part of the law of that contract, and is, therefore, a part of the contract itself. It is a qualification of the

---

[5] Pennsylvania authorities in accord with this statement may be found in Pennsylvania Annotations to the Restatement of Agency, § 161.

[6] Paragraph A of the agency agreement between Hager and the bonding company provides: "The Agent agrees to abide by the rules and written, printed or telegraphic instructions of the Company. Nothing herein contained shall be construed as authorizing the Agent to sign any bond or undertaking on behalf of the Company without specific authority nor waive any forfeiture, nor alter or agree to any alteration, extension or waiver of any bond, undertaking or contract, nor do anything on behalf of the Company unless specifically authorized in writing by the Company so to do."

[7] We do not read Anderson v. National Surety Co., 196 Pa. 288, 46 A. 306, 1900, as supporting the plaintiff's position.

[8] § 374 reads: "The law of the place of performance determines whether release of one party to a contract, or extending the time for performance in favor of the principal party, or surrendering security, discharges the other parties."

obligation of the contract, reducing it from a peremptory and absolute obligation to one of a qualified or conditional character. * * * the right of a surety to discharge his obligation by a disregarded notice to the creditor to pursue the principal debtor, is a matter affecting the obligation of the contract, and must, therefore, be determined by the law of the place of the contract." If Greenwald & Co. v. Kaster, 86 Pa. 45, 1878, is in point at all it looks in this direction also. In Beale on Conflict of Laws, § 374.2 the learned author makes a general statement similar to that already quoted from the Restatement. He adds, however, that in all of the cases found upon the point, it was unnecessary to make a choice between place of contracting and place of performance. The same is true, of course, of the Tenant case just discussed, for the attention of the court there was directed to the distinction between procedure and substance, not between obligation and performance. Nevertheless, the court treated the matter as a matter of obligation and we take the Pennsylvania law as it is declared by Pennsylvania courts. It has been pointed out that the line between obligation and performance is not a bright one, but a question of degree and "Like all questions of degree, the solution must depend upon the circumstances of each case and must be governed by the exercise of judgment." [9] The only Pennsylvania authority which we have classifies the question as one of obligation. That represents the law for a federal court unless and until the courts of Pennsylvania analyze the problem to the contrary.

This being so, the effect of the method of payment adopted by Miller to the subcontractor, Needham, upon the surety's obligation must be determined by the law of Pennsylvania, which we have concluded to be the place of contracting. [10] The case must be remanded to the trial court for the determination and application of that law. There was no express finding in the trial court that the bonds which were the subject-matter of this suit were executed and delivered in Pennsylvania. If, upon further proceedings in this cause, that is found not to be the fact the application of the rule of reference to the place of contracting already set out will clearly determine what law is to be applied. In addition, as pointed out above, the Pennsylvania rule of reference is to the place where the contract was made to determine the scope of Hager's authority to bind his principal.

The judgment of the District Court is reversed and the case is remanded to the District Court for proceedings not inconsistent with this opinion.

---

[9] Restatement, Conflict of Laws, § 332, comment c; Restatement, Conflict of Laws, § 358, comment b.

[10] See National Beverage Sales Co. v. Weinstein, 303 Pa. 387, 154 A. 595, 1931.